WEYENBERG SHOE MFG. CO., Plaintiff-
Appellant and Cross-Respondent,

v.

Allan SEIDL and Arline Seidl, Defendants-
Respondents and Cross-Appellants.

Court of Appeals

*No. 86–0338. Argued March 25, 1987.—Decided June 10, 1987.*

(Also reported in 410 N.W.2d 604.)

On behalf of the plaintiff-appellant and cross-respondent there were briefs by *Fred G. Froiss* and *David R. Cross* of *Quarles & Brady* of Milwaukee. Oral argument by *David R. Cross.*

On behalf of the defendants-respondents and cross-appellants there were briefs and oral argument by *Jeffery R. Myer* of *DeCarvalho & Myer* of Milwaukee.

On behalf of the adjutant general of the State of Wisconsin there was an amicus curiae brief and oral argument by *Major Bruce D. Schrimpf.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   Weyenberg Shoe Mfg. Co. (Weyenberg) appeals from a judgment based upon a jury verdict finding that Weyenberg wrongfully terminated Allan Seidl from its employ. The jury unanimously

awarded the Seidls $57,000 for past damages, $35,000 for future damages and $15,000 for lost employee benefits. The court declined Seidl's request that his recovery be increased by adding an amount for prejudgment interest and reasonable attorney fees.

This wrongful discharge action was tried on an erroneous interpretation of *Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 335 N.W.2d 834 (1983), for a violation of sec. 45.50, Stats.[1] We conclude that Seidl

[1]Section 45.50, Stats., reads in part:

(1) Any person who has enlisted or enlists in or who has been or is inducted or ordered into active service in the armed forces of the United States pursuant to the selective training and service act of 1940 or the national guard and reserve officers mobilization act of 1940, the selective service act of 1948 and any acts amendatory thereof or supplementary thereto or P.L. 87–117, and any person whose services are requested by the federal government for national defense work as a civilian during a period officially proclaimed to be a national emergency or a limited national emergency, who, in order to perform such training or service, has left or leaves a position, other than a temporary position, in the employ of any political subdivision of the state or in the employ of any private or other employer, shall be restored to such position or to a position of like seniority, status, pay and salary advancement as though his service toward seniority, status, pay or salary advancement had not been interrupted by such absence .... . In the event of any dispute arising under this subsection the matter shall be referred to the department of industry, labor and human relations for determination except as such matters pertain to any classified employe of the state, in which case the matter shall be referred to the director of personnel. Orders and determinations of the department of industry, labor and human relations under this section may be reviewed in the manner provided in ch. 227.

(2) The service of any person who is or was restored to a position in accordance with sub. (1) shall be deemed not to be interrupted by the absence, except for the receipt of pay or other compensation for the period of the absence and he or she shall be entitled to participate in insurance, pensions, retirement plans or other benefits offered by the employer under established rules

failed to establish a cause of action under either sec. 45.50 or *Brockmeyer.* We also conclude that the trial court wrongfully dismissed Seidl's federal cause of action under 38 U.S.C. § 2021 (1982). However, because the facts which were proven at trial will support a recovery under the federal cause of action which is enforceable in state court, we affirm.

## INTRODUCTION

This case is unique because it was tried on a state theory of wrongful discharge following dismissal by the trial court of Seidl's federal cause of action. We

and practices relating to employes on furlough or leave of absence in effect with the employer at the time the person entered or was enlisted, inducted or ordered into the forces and service, and shall not be discharged from the position without cause within one year after restoration; and the discharge is subject to all federal or state law affecting any municipal or private employment; and subject to the provisions of contracts that may exist between employer and employe. ...

(3) In case any employer fails or refuses to comply with the provisions of subs. (1) and (2), any court of record whether created by general or special act in the proper county having jurisdiction of an action on contract for an amount exceeding $500 may, upon the filing of a motion, petition or other appropriate pleading and on reasonable notice, which shall not be less than 10 days, to such employer by the person entitled to the benefits of such provisions, specifically require such employer to comply with such provisions, and, as an incident thereto, compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. The court shall order a speedy hearing in any such case and shall advance it on the calendar. No fees or court costs shall be taxed against the person so applying for such benefits. The place of the commencement of the action or proceeding hereunder against a private employer, and the trial or hearing thereof, shall be in any county in which the employment took place or in which such private employer maintains a place of business, and in all other cases shall be as provided in s. 801.50.

are, however, affirming under the federal theory because we conclude that both the evidence presented and the findings of the jury support an award under the federal statute.

The primary issue on appeal is whether there was sufficient evidence to support the jury finding that Seidl was terminated from employment for reporting to emergency national guard duty. Additional issues on appeal deal with: (1) the applicability of state law under *Brockmeyer* and *Bushko v. Miller Brewing Co.*, 134 Wis. 2d 136, 396 N.W.2d 167 (1986);[2] (2) failure to reemploy after completion of military service contrary to sec. 45.50, Stats.; and (3) concurrent state court jurisdiction over a federal cause of action under 38 U.S.C. § 2021(b)(3) (1982).

## FACTS

Allan Seidl (Seidl) was employed by Weyenberg as its chief accountant from 1975 to June 13, 1983. On May 25, 1983, Seidl received a phone call ordering him to report for his annual national guard two-week summer camp the following day, May 26. Seidl had previously informed his immediate supervisor, Roland Keuler, that he would be attending camp between May 28 and June 12, 1983. Seidl contends that he attempted to inform Keuler of his additional guard duty but Keuler was unavailable because he was either in meetings or on the phone. Seidl did inform two other Weyenberg employees that he would be absent on May 26 and 27. Keuler testified that on May

---

[2]We note that the trial court did not have the benefit of *Bushko v. Miller Brewing Co.*, 134 Wis. 2d 136, 396 N.W.2d 167 (1986), at Seidl's trial. The trial was on July 30, 1986 and *Bushko* was decided November 25, 1986.

26 he was informed by both Weyenberg employees prior to 9:00 a.m. that Seidl had been called away on guard duty on short notice.

After returning to work on June 13, Seidl was told that his employment was being terminated, allegedly for his failure to communicate his whereabouts to Keuler in advance. Supplemental facts will be set forth as required.

## SUFFICIENCY OF EVIDENCE

Weyenberg argues that there was no credible evidence to support the jury's finding that Seidl was fired because of his national guard duties. In support of this argument, it offers the testimony of Keuler, who stated that Seidl was not fired for his national guard obligations. He acknowledged, however, that Seidl's absence on May 26 was a motivating factor in his decision to fire Seidl.

Keuler testified at trial that the decision to discharge Seidl had been made on May 26, but he did not write a memo of the discharge until June 13. The original text of the memo, set forth below, did not include the information appearing in emphasis below. Keuler testified that the material was added after the memo was completed:

> Discussed with Al the fact that we had decided to terminate his employment primarily *because he was not adequately performing his duties and* due to his lack of communication ~~and~~ regarding his whereabouts and his frequent distractions from duties due to phone calls, etc. at work which made him unavailable to people he supervised. I mentioned the latest incident relating to his guard duty (See my memo dtd [sic] 5/26/83). He claimed he told me of his plans. [Emphasis added.]

Two other Weyenberg employees also testified that Weyenberg had never given them any difficulty about fulfilling their reserve obligations. Weyenberg contends that the only evidence in support of Seidl's claim of wrongful discharge because of national guard service is Seidl's own self-serving testimony.

The standard of review for a jury verdict is that it will be sustained if there is any credible evidence to support it. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984). This is especially true where the verdict has the approval of the trial court. *Id.* This is because the credibility of witnesses and the weight afforded to their individual testimony is left to the province of the jury. Where more than one reasonable inference can be drawn from the evidence adduced at trial, the appellate court must accept the inference that was drawn by the jury. *Id.* at 305–06, 347 N.W.2d at 598.

Seidl's action was based upon his claim that he was fired because of his obligation to serve in the Wisconsin National Guard. The jury was instructed that public policy in Wisconsin prohibits the firing of an employee for performing an obligation to serve in the national guard. The special verdict asked the jury to determine whether Seidl had been "wrongfully terminated from his employment contrary to public policy."

After reviewing the record, we conclude, as did the trial court, that there was sufficient evidence to support the jury's finding that Seidl's termination was for his participation in national guard exercises.

## BROCKMEYER AND SEC. 45.50, STATS.

Weyenberg originally brought suit against the Seidls to recover $3500 outstanding on a promissory

note executed by the Seidls in favor of Weyenberg while Seidl was in its employ. The Seidls counterclaimed, alleging that Seidl's termination was in violation of the Federal Age Discrimination in Employment Act. A second, two-pronged counterclaim alleged, first, that Seidl's termination was in violation of federal law under the Vietnam Era Veterans' Readjustment Assistance Act (VEVRA), 38 U.S.C. § 2021(b)(3) (1982), and also, that his termination violated the holding of *Brockmeyer* because the reason for the discharge contravened a strong public policy. Seidl voluntarily dismissed his first counterclaim for age discrimination on the first day of trial.

Weyenberg moved to dismiss Seidl's second counterclaim for wrongful discharge on the grounds that federal courts have exclusive jurisdiction over claims related to VEVRA. The trial court agreed, holding that it had no subject matter jurisdiction over the second counterclaim "as it pertains to ... 38 U.S.C. 2021(b)(3)" and further ruled that the state law wrongful discharge theory must be based "upon violation of state public policy as evidenced by state law." At that point, Seidl indicated his intention of relying on sec. 45.50, Stats., as the basis for his wrongful discharge claim.

Weyenberg argues that Seidl's claim should be dismissed because: (1) he failed to pursue the administrative remedies provided under sec. 45.50(1), Stats.; (2) his services amount to an indefinite general hiring terminable at the will of either party for any reason or no reason at all; and (3) the "narrow public policy exception" created by the Wisconsin Supreme Court in *Brockmeyer* does not apply.

Seidl contends that sec. 45.50, Stats., applies to his situation, requiring Weyenberg to reinstate and compensate him for lost back pay. The application of a statute to a particular set of facts is a question of law. We decide questions of law without deference to the trial court. *Neis v. Board of Educ.,* 128 Wis. 2d 309, 313, 381 N.W.2d 614, 616 (Ct. App. 1985). We conclude that sec. 45.50 does not apply because it requires "active service in the armed forces of the United States" or "services [which] are requested by the federal government ... during a period officially proclaimed to be a national emergency or a limited national emergency." Sec. 45.50(1). This language does not encompass a person like Seidl who has been ordered by the Governor of the State of Wisconsin to national guard training duty for two weeks.[3] Because we hold that sec. 45.50 does not apply, we need not address Seidl's failure to comply with the administrative requirements of that statute.

At trial and on appeal, Seidl also relies on *Brockmeyer* to support his wrongful discharge cause of action. However, he fails to show that his termination was for *refusing to violate* an established and well-defined public policy evidenced by existing law. *Bushko,* 134 Wis. 2d at 141, 396 N.W.2d at 170. The court in *Bushko* held:

[3]We asked the Adjutant General for the State of Wisconsin to file an amicus brief in this case. The Adjutant General conceded in his brief and at oral argument that sec. 45.50, Stats., did not apply to Seidl. Seidl was ordered to active duty pursuant to a set of orders which derived their authority from 32 U.S.C. § 503 (1982). That section is not listed in sec. 45.50. Therefore, Seidl is not considered to be in "active service" for the purposes of sec. 45.50.

> An employee who refuses a command to violate public policy is acting consistent with public policy. However, if the employee of his own volition acts consistently with public policy, he does no more than obey the law. Such consistent action, without an employer's command to do otherwise, is merely "praiseworthy" conduct.

*Id.* at 142, 396 N.W.2d at 170. Because Seidl's action in going to guard camp is *consistent with* public policy rather than a *refusal to violate* public policy, termination for said conduct does not fall within the extremely narrow exception of the employment at will doctrine under *Brockmeyer* and *Bushko.*

## STATE COURT JURISDICTION
## UNDER 38 U.S.C. § 2021 (1982)

Seidl argues, in the alternative, that this court should affirm the judgment on the basis of the federal claim under 38 U.S.C. § 2021(b)(3) (1982). He contends that a judgment may be affirmed on appeal, even though supported by the lower court on an erroneous theory, where judgment on the correct theory would be proper. We agree. An appellate court has the power to affirm a judgment if the result was correct even if the reasons were wrong. *Negus v. Madison Gas & Elec. Co.,* 112 Wis. 2d 52, 61 & n. 3, 331 N.W.2d 658, 663–64 (Ct. App. 1983) (citing *State v. Alles,* 106 Wis. 2d 368, 316 N.W.2d 378 (1982)). The Wisconsin Supreme Court noted in *Alles* that:

> [W]hen the error complained of, if corrected, would sustain the judgment, order, or portion thereof appealed from, the respondent by common law is entitled to have review of such claimed error .... The reason for this is the accepted appellate court

383

> rationale that a respondent's judgment or verdict will not be overturned where the record reveals that the trial court's decision was right, although for the wrong reason.

*Alles,* 106 Wis. 2d at 391, 316 N.W.2d at 388. The trial court decided that it did not have subject matter jurisdiction over claims arising under 38 U.S.C. § 2021. However, we conclude that the trial court erroneously dismissed Seidl's counterclaim as it pertained to VEVRA.

In the absence of an express congressional provision to the contrary, there is a presumption in favor of state court concurrent jurisdiction over civil causes of action arising under federal statutes. "[T]he presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 478 (1981).

Weyenberg argues that the wording of 38 U.S.C.A. § 2022 (West Supp. 1987), which sets forth the enforcement procedures for VEVRA, shows a congressional intent to grant exclusive jurisdiction to the federal courts. We do not read 38 U.S.C.A. § 2022 so as to oust state courts of subject matter jurisdiction in this case. Section 2022 provides:

> If any employer, who is a private employer or a State or political subdivision thereof, fails or refuses to comply with the provisions of section 2021(a), (b)(1), or (b)(3), or 2024 of this title, *the district court of the United States* for any district in which such private employer maintains a place of business, or in which such State or political

subdivision thereof exercises authority or carriers [sic] out its functions, *shall have the power,* upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, *specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action.* Any such compensation shall be in addition to and shall not be deemed to diminish any of the benefits provided for in such provisions. Upon application to the *United States attorney or comparable official* for any district in which such private employer maintains a place of business, or in which such State or political subdivision thereof exercises authority or carries out its functions, by any person claiming to be entitled to the benefits provided for in such provisions, such United States attorney or official, if reasonably satisfied person so applying is entitled to such benefits, shall appear and act as attorney for such person in the amicable adjustment of the claim or in the filing of any motion, petition, or other appropriate pleading and the prosecution thereof specifically to require such employer to comply with such provisions. No fees or court costs shall be taxed against any person who may apply for such benefits. In any such action only the employer shall be deemed a necessary party respondent. *No State statute of limitations shall apply to any proceedings under this chapter.* [Emphasis added.]

We note that nowhere in this section does Congress explicitly or even implicitly deny state courts jurisdiction over actions brought under § 2021. "It is black letter law ... that the mere grant of jurisdiction to a federal court does not operate to oust

a state court from concurrent jurisdiction over the cause of action." *Gulf Offshore Co.,* 453 U.S. at 479.

The courts of this state have generally held that when there is no express provision excluding jurisdiction or when there is no incompatibility in allowing concurrent jurisdiction, the courts of Wisconsin will exercise subject matter jurisdiction and apply the federal law. *Terry v. Kolski,* 78 Wis. 2d 475, 483, 254 N.W.2d 704, 706 (1977). Wisconsin appellate courts have uniformly followed the reasoning that state courts have a constitutional duty to enforce federal substantive rights in the state forum. *Id.* at 484, 254 N.W.2d at 706.

Likewise, our research reveals nothing in the legislative history of 38 U.S.C. § 2021 (1982) to indicate that state courts were not meant to have concurrent jurisdiction with federal courts. *See* 1976 U.S. Code Cong. & Admin. News 5241 and 1986 U.S. Code Cong. & Admin. News 5468.

Finally, we turn to whether there is any incompatibility between state court jurisdiction and federal interests. Section 2021 has been interpreted by the United States Supreme Court in *Monroe v. Standard Oil Co.,* 452 U.S. 549 (1981). The Court relied upon a Senate Report, a House Report and the testimony of Hugh Bradley, Director of the Office of Veterans' Reemployment Rights of the Labor Department. Bradley testified that § 2021(b)(3)

> is designed to enable reservists and guardsmen who leave their jobs to perform training in the Armed Forces, to retain their employment and to enjoy all of the employment opportunities and

> benefits accorded their co-workers who do not have
> military training obligations.

*Id.* at 558–59 (quoting 1966 House Hearings at 5312). The clear intent and purpose of § 2021 can be carried out by state courts applying federal law as easily as federal courts. There is no incompatibility between state court jurisdiction and federal interests. In fact, allowing a guardsman to proceed in state court affords him the greater accessibility of local state courts which is compatible in all respects with the federal legislative intent. Weyenberg has not overcome the presumption in favor of state court concurrent jurisdiction under *Gulf Offshore Co.* We therefore reverse the order of the trial court dismissing the cause of action under 38 U.S.C. § 2021 (1982).

## AFFIRMANCE UNDER FEDERAL LAW

Seidl claims that under 38 U.S.C. § 2021(b)(3) (1982) he was entitled to retention in employment upon completion of his national guard obligations. That section provides in pertinent part:

> Any person who [is employed by a private employer] shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces.

The United States Supreme Court has determined that this section protects both ready reservists and national guardsmen. *Monroe,* 452 U.S. at 551 n. 2. We conclude that Seidl is entitled to the protection of the statute.

In order to prevail under § 2021, Seidl must prove: (1) he was employed by a private employer (38 U.S.C. § 2021(a)(B) (1982)); (2) he was denied retention in employment; and (3) such denial was because of his obligation as a member of the armed forces. There is no doubt that the first and second criteria have been fulfilled. We also conclude that the third criterion has been met based upon our examination of the record—in particular, the jury instructions and the special verdict.

At trial, the jury was instructed as follows:

> In Wisconsin, an employer may discharge an employee for good reason, for no reason, or even for a reason that is morally wrong, without committing a legal wrong. One exception to this rule is where the termination of the employee's job violates a well established and important public policy. Public policy in Wisconsin prohibits firing of an employee for performing an obligation to serve in the Wisconsin National Guard.
>
> Allan Seidl claims that he was fired from his job because of his obligation to serve in the Wisconsin National Guard on May 26th and May 27th, 1983. If you find that he was fired by his employer for that reason, then he was wrongfully discharged.

The jury then answered "yes" to the following question in the special verdict: "Was the Defendant Allan Seidl, wrongfully terminated from his employment contrary to public policy?" Considering the instructions and the wording of the special verdict, the jury's answer could only be based upon its conclusion that Seidl had been denied retention because of his obligation to serve in the national guard. Because Seidl

established that his discharge was contrary to 38 U.S.C. § 2021(b)(3) (1982), we affirm the award of damages.

## PREJUDGMENT INTEREST

Seidl contends on appeal that had the circuit court not erroneously dismissed his federal claim, there is no question that prejudgment interest would be added to the judgment. Prejudgment interest on back pay awards has been accepted as an appropriate remedy under federal law. *Anderson v. LIRC,* 111 Wis. 2d 245, 258, 330 N.W.2d 594, 601 (1983). In this case, Seidl was deprived of reemployment rights explicitly granted to him by Congress. *See Hembree v. Georgia Power Co.,* 637 F.2d 423, 430 (5th Cir. 1981). The only way he can be "made whole" is by awarding him prejudgment interest. *Id.; Peel v. Florida Dep't of Transp.,* 500 F. Supp. 526, 528 (N.D. Fla. 1980).

██

The general rule in Wisconsin is that prejudgment interest is available as a matter of law on fixed and determinable claims, *Murray v. Holiday Rambler, Inc.,* 83 Wis. 2d 406, 438, 265 N.W.2d 513, 529 (1978), or where there is a reasonably certain standard for measuring damages. *First Wis. Trust Co. v. L. Wiemann Co.,* 93 Wis. 2d 258, 276, 286 N.W.2d 360, 368–69 (1980). In this case, the jury was instructed that

> wages and fringe benefits lost as a result of a wrongful discharge are a proper basis for awarding damages resulting from a wrongful discharge. Both the loss of past wages and fringe benefits and the loss of prospective or future earnings and benefits are a proper basis for awarding damages resulting from a wrongful discharge when the circumstances

are such that the damages can be computed with some reasonable certainty.

We conclude that there was a "reasonably certain standard" by which the jury could measure the damages suffered by Seidl. We therefore reverse that part of the trial court's decision and remand for a determination of prejudgment interest in accordance with this opinion.

## ATTORNEY FEES

Siedl has not identified any express authorization for attorney fees under 38 U.S.C. § 2021 (1982). It is a well-settled rule that if an act does not provide for them, the prevailing party is not entitled to an award of attorney fees. *See Witter v. Pennsylvania Nat'l Guard,* 462 F. Supp. 299, 306 (E.D. Pa. 1978).

No costs to either party.

*By the Court.*—Judgment and order affirmed in part and reversed in part; cause remanded with directions.