BATTERIES PLUS, LLC, Plaintiff-Appellant-Petitioner,

v.

Clinton MOHR, Defendant-Respondent.†

Supreme Court

*No. 99–1319. Oral argument February 27, 2001.—Decided June 29, 2001.*

**2001 WI 80**

(Also reported in 628 N.W.2d 364.)

†Motion for Reconsideration dismissed 11-19-01.

For the plaintiff-appellant-petitioner there were briefs by *Roger L. Pettit* and *Petrie & Stocking, S.C.*, Milwaukee, and oral argument by *Roger L. Pettit*.

For the defendant-respondent there was a brief by *Richard R. Grant* and *Consigny, Andrews, Hemming & Grant, S.C.*, Janesville, and oral argument by *Richard Grant*.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *Batteries Plus, LLC v. Mohr*, 2000 WI App 153, 237 Wis. 2d 776, 615 N.W.2d 196. Batteries Plus, a retail seller of batteries, sued Clinton Mohr (Mohr), one of its former at-will employees, for repayment of past wages. Batteries Plus claimed that it accidentally overpaid Mohr approximately $11,500 for mileage expenses when Mohr was a commercial sales specialist for the company. Mohr counterclaimed, alleging that Batteries Plus wrongfully discharged him when he refused to agree to reimburse the company, through deductions from his future wages, for the alleged overpayment.

¶ 2. The case was tried to a jury in the circuit court for Waukesha County, Patrick L. Snyder, Judge. The jury returned a verdict in favor of Mohr, awarding him damages for wrongful discharge and underpayment of wages. In allowing Mohr's counterclaim, the circuit court ruled that Wis. Stat. § 103.455 (1995–96)[1] provided a well-established and important public policy basis to preclude Batteries Plus from lawfully discharging Mohr for his refusal to agree to have repayment amounts deducted from his wages. The court of appeals affirmed.

¶ 3. We disagree with the circuit court and the court of appeals in their application of the law. Although Wis. Stat. § 103.455 embodies a fundamental and well-defined public policy, the policy does not apply to the fact situation in this case. Neither the letter nor the spirit of § 103.455 covers this situation in which an employer claims that it overpaid its employee by mistake and the employee gives the employer no choice but to go to court to recover the money. We conclude that Mohr may not maintain an action for wrongful discharge under these circumstances. Accordingly, we reverse the decision of the court of appeals.

I

¶ 4. In 1993, Mohr sold his battery business to Batteries Plus but he remained with the company as an employee. At the outset, Mohr worked as a store manager. In 1994, Batteries Plus made Mohr a commercial sales specialist. Mohr's compensation package included a base salary and a commission of a percentage of the gross profits on all sales. Mohr used his own

---

[1] All statutory references are to the 1995–96 volumes of the Wisconsin Statutes.

vehicle in his sales position, and he received reimbursement for mileage expenses from the start of his new position in August 1994 until April 1996.

¶ 5. In 1996, Batteries Plus informed Mohr that it had mistakenly paid him for mileage expenses. It claims that it had been paying Mohr an extra two percent in commissions to accommodate his travel expenses and that he was not supposed to receive additional reimbursement for mileage. Batteries Plus asked him to agree to deductions from future wages in order to reimburse it for the overpayment. Mohr refused and denied that he had been overpaid. Over a period of several months the parties discussed the company's claim of overpayment. There were sharp exchanges of words and letters, including a rejected request for an employment contract. Mohr's employment ended July 1, 1996, with Mohr claiming that he had been fired and the company claiming that Mohr had quit.

¶ 6. Batteries Plus thereafter instituted a collection action against Mohr in circuit court to recover the alleged overpayment. Mohr counterclaimed, alleging wrongful discharge, breach of employment contract, and violation of Wis. Stat. Ch. 109 on wage claims. After a trial, the jury found that Mohr had not been overpaid. Instead, it found that Mohr had been underpaid and was entitled to $3400. The jury also found that Mohr was an at-will employee as opposed to a contract employee, and that he had been wrongfully discharged. As a result, the jury awarded Mohr $60,000 in damages.

¶ 7. Following the trial, Batteries Plus moved the circuit court for various forms of relief. First, Batteries Plus asked the circuit court to change the jury's special verdict answer as to the underpayment of wages, on

grounds that there was insufficient evidence for such a jury finding.

¶ 8. Second, Batteries Plus moved the circuit court to change the jury's answer on the issue of whether Mohr was wrongfully discharged. Batteries Plus argued that there was insufficient evidence for such a jury finding. It also argued that the jury's answer on the question of wrongful discharge was invalid as a matter of law because no public policy embodied in existing law precluded Batteries Plus from conditioning Mohr's continued employment on his agreeing to repay the compensation for mileage expenses. Batteries Plus made the latter argument both before and after trial.

¶ 9. Third, pursuant to Wis. Stat. § 805.15, Batteries Plus moved the circuit court for a new trial on its collection claim and Mohr's claim for unpaid wages. It argued that the jury verdict was "contrary to the law and to the weight of evidence and that a new trial should be awarded on those two issues in the interest of justice."

¶ 10. The circuit court denied all of Batteries Plus's motions, although it reduced the jury's answer on Mohr's claim for underpayment of wages from $3400 to $137. The $137 underpayment occurred because of a clerical mistake by the employer that was discovered during the course of the trial. The circuit court also awarded Mohr double costs and interest pursuant to Wis. Stat. § 807.01, the statute relating to settlement offers.

¶ 11. Batteries Plus appealed and the court of appeals affirmed the judgment of the circuit court. The court ruled that (1) Mohr identified a fundamental and well-defined public policy that applied to the facts of this case; (2) there was credible evidence for the jury's

finding that Mohr was discharged for refusing to act in contravention of the fundamental and well-defined public policy; and (3) the circuit court properly awarded interest and double costs pursuant to Wis. Stat. § 807.01. *Batteries Plus*, 237 Wis. 2d at ¶¶ 18, 26, 30.

¶ 12.  We granted Batteries Plus's petition for review. The appeal to this court challenges only the propriety of Mohr's claim for wrongful discharge and does not involve the award for underpayment of wages or the award of interest and double costs. Batteries Plus also has not appealed its unsuccessful claim that it overpaid Mohr.

## II

¶ 13.  The employment-at-will doctrine is an established general tenet of workplace relations in Wisconsin. *Hausman v. St. Croix Care Ctr.*, 214 Wis. 2d 655, 663, 571 N.W.2d 393 (1997). It has been recognized in case law since 1871. *Prentiss v. Ledyard*, 28 Wis. 131, 133 (1871). Its "centrality" in the marketplace was reaffirmed this term in *Mackenzie v. Miller Brewing Co.*, 2001 WI 23, ¶ 12, 241 Wis. 2d 700, 623 N.W.2d 739, where this court explained that the employment-at-will rule serves the interests of employees as well as employers.

¶ 14.  The interest of employees is well understood. An at-will relationship allows an employee to leave the employer at any time for any reason. This right is especially appealing when the economy is strong and labor is in short supply, because it permits the employee to move freely from one position to another.

¶ 15.  The employer's side of the equation is often less understood. Employment-at-will usually reaches a court in the context of a contested employee discharge,

a situation in which the individual employee is pitted against a seemingly more powerful employer. This context seldom facilitates a detached appreciation that the employer should have the same right, for whatever reason, to dispense with the services of an employee as the employee has to quit. The antidote for both parties to the potential unfairness arising from a party's change of heart is an employment contract.

¶ 16.   The employment-at-will doctrine permits an "employer [to] discharge an employee 'for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong.'" *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 567, 335 N.W.2d 834 (1983).[2]

¶ 17.   In 1983, in *Brockmeyer*, this court recognized a "narrow public policy exception" to the employment-at-will doctrine, allowing an employee a cause of action "for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." *Id.* at 572–73.

¶ 18.   In the years since 1983, the court's formulation of this exception has been tested many times. Last term, we unanimously reaffirmed the exception in *Strozinsky v. School District of Brown Deer*, 2000 WI

---

[2] The *Brockmeyer* opinion cites Lawrence E. Blades, *Employment at Will v. Individual Freedom: On Limiting the Abusive Exercise of Employer Power*, 67 Colum. L. Rev. 1404, 1405 (1967), which in turn quotes *Payne v. Western & Atlantic Railroad Co.*, 81 Tenn. 507, 519–20 (1884), *overruled on other grounds by Hutton v. Watters*, 179 S.W. 134 (Tenn. 1915), as the source of this formulation. *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 567 n.4, 335 N.W.2d 834 (1983).

97, 237 Wis. 2d 19, 614 N.W.2d 443. As we noted in *Strozinsky*, "statutory modifications to the rule of employment-at-will targeted the potentially harsh application of the doctrine by allowing employees to seek relief for certain types of terminations." 237 Wis. 2d at ¶ 34 (citing *Brockmeyer*, 113 Wis. 2d at 567–68). For example, statutes make it unlawful for employers to terminate employees because of race, color, religion, sex, or national origin;[3] participation in union activities, jury service, or military service; or testifying at an occupational, safety, and health proceeding. *Id.* (citing *Brockmeyer*, 113 Wis. 2d at 567–68).

¶ 19.  *Brockmeyer* was this court's first decision to recognize an exception to the employment-at-will doctrine.[4] In *Strozinsky*, we summarized the law on the subject:

> The *Brockmeyer* court recognized a narrow public policy exception that allows a cause of action "for wrongful discharge when the discharge is contrary to a fundamental and well defined public policy as evidenced by existing law." This exception properly balances the need to protect employees from terminations that contradict public policy with the employer's historical discretion to discharge employees under the freedom to contract embodied

---

[3] 42 U.S.C. § 2000e–2 (1994) (Title VII of the Civil Rights Act of 1964); Wis. Stat. §§ 111.31–111.395 (Wisconsin Fair Employment Act).

[4] The *Brockmeyer* court cited *Ward v. Frito-Lay, Inc.*, 95 Wis. 2d 372, 290 N.W.2d 536 (Ct. App. 1980), as providing a foundation for its decision. *Brockmeyer*, 113 Wis. 2d at 572. The court decided another case on the same day, *Scarpace v. Sears, Roebuck & Co.*, 113 Wis. 2d 608, 335 N.W.2d 844 (1983), reiterating the *Brockmeyer* holding.

in the at-will doctrine. *Bushko v. Miller Brewing Co.*, 134 Wis. 2d 136, 148, 396 N.W.2d 167 (1986) (Abrahamson, J., concurring). Our acceptance of this public policy exception mirrored the approach taken by sister courts in other states.

Plaintiffs seeking relief under this narrow exception must: (1) first identify a fundamental and well defined public policy in their complaint sufficient to trigger the exception to the employment-at-will doctrine; and (2) then demonstrate that the discharge violated that fundamental and well defined public policy. *Winkelman v. Beloit Mem'l Hosp.*, 168 Wis. 2d 12, 24, 483 N.W.2d 211 (1992); *Wandry v. Bull's Eye Credit Union*, 129 Wis. 2d 37, 41–42, 384 N.W.2d 325 (1986). Once the plaintiff satisfies these first two steps, the burden shifts to the employer to show that the discharge actually was sparked by just cause. *Winkelman*, 168 Wis. 2d at 24.

*Strozinsky*, 237 Wis. 2d at ¶¶ 36–37 (footnotes and citation omitted). As noted, the burden of demonstrating a fundamental and well-defined public policy rests with the employee. *Brockmeyer*, 113 Wis. 2d at 574.

¶ 20.   Since *Brockmeyer*, a series of cases has contoured the scope of the cause of action for wrongful discharge in the employment-at-will context.[5] One of

[5] *Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶ 63, 237 Wis. 2d 19, 614 N.W.2d 443 (finding sufficient public policy in federal taxation statutes requiring accurate reporting of tax information); *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 115–16, 579 N.W.2d 217 (1998) (holding that refusal to sign a nondisclosure and noncompete agreement did not give rise to a cause of action for wrongful discharge under *Brockmeyer*); *Hausman v. St. Croix Care Ctr.*, 214 Wis. 2d 655, 667–68, 571 N.W.2d 393 (1997) (declining to adopt a general "whistleblower" exception, but finding a sufficient public policy when

the cases, *Wandry v. Bull's Eye Credit Union,* 129 Wis. 2d 37, 42–43, 384 N.W.2d 325 (1986), outlines four tenets of public policy articulated in *Brockmeyer.*

1. An employer is liable for wrongful discharge if it discharges an employee for refusing to violate a constitutional or statutory provision. Employers will be held liable for those terminations that effectuate an unlawful end.

2. The discharge must clearly contravene the public welfare and gravely violate paramount requirements of public interest.

3. An employer is liable for wrongful discharge if the employer discharges an employee for

---

nursing home employees reported abuse or neglect as required by statute); *Kempfer v. Automated Finishing, Inc.,* 211 Wis. 2d 100, 113–14, 564 N.W.2d 692 (1997) (finding a sufficient public policy when a trucker refused employer's command to operate his vehicle without a valid operators' license); *Winkelman v. Beloit Mem'l Hosp.,* 168 Wis. 2d 12, 24, 483 N.W.2d 211 (1992) (finding a sufficient public policy when an employer conditioned a nurse's continued employment on the violation of a provision in the Wisconsin Administrative Code); *Schultz v. Prod. Stamping Corp.,* 148 Wis. 2d 17, 23, 434 N.W.2d 780 (1989) (finding sufficient public policy not established in plaintiff's claim that employer did not disclose details of a pension plan before requiring employees to join the plan as a condition of employment); *Bushko v. Miller Brewing Co.,* 134 Wis. 2d 136, 142, 396 N.W.2d 167 (1986) (holding that conduct by employee that merely promoted the public interest in safety and proper hazardous waste disposal—and did not involve the employer forcing the employee to violate a law—did not provide a sufficient public policy); *Wandry v. Bull's Eye Credit Union,* 129 Wis. 2d 37, 384 N.W.2d 325 (1986) (recognizing that a discharge can violate the spirit of a statutory provision).

A summary review of these cases is set forth in *Strozinsky,* 237 Wis. 2d at ¶¶ 33–47.

conduct that is "consistent with a clear and compelling public policy."

4. An employer is not liable for wrongful discharge merely because the employee's conduct precipitating the discharge was praiseworthy or the public derived some benefit from it.

*Wandry*, 129 Wis. 2d at 42–43 (citing *Brockmeyer*, 113 Wis. 2d at 573–74), *reviewed in Strozinsky*, 237 Wis. 2d at ¶ 37 n.10. The situation in *Wandry* is also the most pertinent to the case at hand.

### III

¶ 21. Donna Wandry was an at-will employee at the Bull's Eye Credit Union. She worked as a cashier. A customer asked her to cash a payroll check from a local corporation, and after submitting the check to her supervisor for approval, she cashed it, giving the customer almost $500. She did not realize that the check was stolen and forged. The employer later told Wandry that she had to reimburse Bull's Eye for the money or she would not be bondable and could not work for Bull's Eye. She refused to pay, and Bull's Eye terminated her for that reason. *Wandry*, 129 Wis. 2d at 39–40.

¶ 22. Wandry sued, claiming that she was wrongfully discharged, that in firing her, Bull's Eye violated a fundamental and well-defined public policy. *Id.* at 40. She cited Wis. Stat. § 103.455 (1983–84) as the source of the policy.[6] *Id.* at 43.

---

[6] Wisconsin Stat. § 103.455 (1983–84) reads in part:

Deductions for faulty workmanship, loss, theft or damage. No employer shall make any deduction from the wages due or earned by any employe, who is not an independent contractor, for defective or faulty workmanship, lost or stolen property or damage to property, unless the employe authorizes the employer in writing to make such deduction or unless the employer and a representative designated by the employe shall determine that such defective or

¶ 23.   In holding for Donna Wandry, this court acknowledged that Bull's Eye had not violated the letter of the law, but it held that Wandry's termination violated "a fundamental and well-defined public policy proscribing economic coercion by an employer upon an employee to bear the burden of a work-related loss when the employee has no opportunity to show that the loss was not caused by the employee's carelessness, negligence, or wilful misconduct." *Id.* at 47.

¶ 24.  ·The court stated that "[t]he public policy of a statute is not limited to the circumstances described in the statute. The public policy of a statute may be invoked in contexts outside the precise reach of the statute." *Id.* at 46–47. In *Strozinsky*, we reiterated "that a discharge can violate the spirit, if not the exact letter, of a statutory provision." *Strozinsky*, 237 Wis. 2d at ¶ 43. As a result, we do not necessarily restrict our inquiry "to the literal language" of the statute. *Bushko v. Miller Brewing Co.*, 134 Wis. 2d 136, 148, 396 N.W.2d 167 (1986) (Abrahamson, J., concurring).

### IV

■

¶ 25.   In a wrongful discharge case, the question whether an employee has established a fundamental and well-defined public policy is a question of law. *Brockmeyer*, 113 Wis. 2d at 574; *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 110, 579 N.W.2d 217 (1998);

---

faulty work, loss or theft, or damage is due to worker's negligence, carelessness, or wilful and intentional conduct on the part of such employe, or unless the employe is found guilty or held liable in a court of competent jurisdiction by reason thereof. If any such deduction is made or credit taken by any employer, that is not in accordance with this section, the employer shall be liable for twice the amount of the deduction or credit taken in a civil action brought by said employe.

*Kempfer v. Automated Finishing Co.*, 211 Wis. 2d 100, 107–08, 564 N.W.2d 692 (1997). We review this question de novo, *Winkelman v. Beloit Memorial Hospital*, 168 Wis. 2d 12, 24, 483 N.W.2d 211 (1992); *Strozinsky*, 237 Wis. 2d at ¶ 31, benefiting from the analyses of the circuit court and the court of appeals. As noted, the employee has the burden of showing that his or her dismissal violated a clear and compelling public policy. *Brockmeyer*, 113 Wis. 2d at 574.

¶ 26. In *Brockmeyer*, the court explained that state courts had recognized two theories to protect workers from wrongful discharge in circumstances not covered by legislation. "The first, and the more expansive of the two theories, is imposing upon an employer an implied duty to terminate an employee only in good faith." *Id.* at 569. The court rejected this theory. "We refuse to impose a duty to terminate in good faith into employment contracts." *Id.*

> To do so would "subject each discharge to judicial incursions into the amorphous concept of bad faith." Moreover, we feel it unnecessary and unwarranted for the courts to become arbiters of any termination that may have a tinge of bad faith attached. Imposing a good faith duty to terminate would unduly restrict an employer's discretion in managing the work force.

*Id.*[7]

---

[7] In *Scarpace*, this court reviewed the discharge of an employee who had sustained non-work related injuries that prevented her from working all of her scheduled hours. The court upheld her discharge saying, "Scarpace was terminated for legitimate business reasons. She was unable to work her assigned hours. It is irrelevant whether Sears could have or

¶ 27. The court then embraced the second theory, "widely known as the 'public policy exception.' " *Id.* It cited cases of wrongful discharge of an employee for refusing to commit perjury before a legislative committee, for filing a worker's compensation claim, for complying with jury duty, and for supplying information about a fellow employee to law enforcement. *Id.* at 569–71. The court summed up its view of public policy, saying that it was "a broad concept embodying the community common sense and common conscience." *Id.* at 573.

¶ 28. This "common sense and common conscience" is displayed in the cases in which this court has recognized a fundamental and well-defined public policy: *Wandry, Winkelman* (a nurse's continued employment conditioned on the violation of a provision in the Wisconsin Administrative Code); *Kempfer* (trucker fired after refusing employer's command to operate vehicle without a valid operators' license); *Hausman* (nursing home employees terminated after reporting abuse or neglect as required by statute); and *Strozinsky* (employee harassed for complying with tax law). Each of these cases has a clear, well-defined policy in which the public has an interest and each case has compelling facts.

¶ 29. By contrast, in *Brockmeyer, Scarpace, Bushko, Schultz,* and *Tatge,* we faced personnel problems or employer-employee tensions within the workplace. In traditional employment relations, the fact that a discharged employee has been treated unfairly or even with a tinge of bad faith is simply not enough to invalidate the employer's decision to dis-

should have acted in better faith when making its termination decision." *Scarpace,* 113 Wis. 2d at 609–10.

573

charge for "no cause, or even for cause morally wrong." *Brockmeyer*, 113 Wis. 2d at 567. This is the reality of employment-at-will. The employee does not have a cause of action for wrongful discharge until the employee is able to demonstrate that the employer has violated a fundamental and well-defined public policy.

¶ 30. In this case, the jury found that Mohr was an at-will employee. This means that he could have left Batteries Plus at any time for any reason. Conversely, Batteries Plus was entitled to terminate him abruptly without cause. In this very dispute, Batteries Plus required Mohr to pay his own travel expenses as of April 1996. Even if this decision were unreasonable, it was well within the company's rights.

¶ 31. Mohr's claim is that he refused to sign a note to pay back $11,500 in contested travel expenses from his future wages in order to keep his job, and because of that refusal he was fired. He argues that this discharge violated the fundamental and well-defined public policy in Wis. Stat. § 103.455 "proscribing economic coercion by an employer upon an employee to bear the burden of a work-related loss." *Wandry*, 129 Wis. 2d at 47. *Wandry* quotes *Donovan v. Schlesner*, 72 Wis. 2d 74, 82, 240 N.W.2d 135 (1976), in explanation of the policy: "The entire purpose of the statute is to preclude any deduction for losses until the employee has an opportunity to show his lack of fault." *Wandry*, 129 Wis. 2d at 46.

¶ 32. This case involves a very different dynamic. The circuit court submitted instructions to the jury that said: "Public policy in Wisconsin prohibits the firing of an employee for contesting deductions from wages due or earned by the employee for an economic loss to the employer." The court of appeals expanded the "well-defined" public policy to "prohibit[ ] an

employer from extracting repayment of expenses from employees by means of economic duress." *Batteries Plus*, 237 Wis. 2d at ¶ 1. "The spirit of the statute is the legislature's intention of ensuring that employees do not unfairly bear the employer's costs of operating a business." *Id.* at ¶ 17. "We conclude that the exception to the employment-at-will doctrine. . .prohibits an employer from using its coercive economic power to shift the burden of operating its business to the employee, including the employer's overpayment of travel expenses or wages." *Id.* at ¶ 18.

¶ 33.   These formulations of the public policy exception go beyond both the facts and the statute. They would interject government agencies and the courts into traditional employment relations in a manner inconsistent with employment-at-will. We can foresee situations in which an employer is entitled legitimately to use its leverage to recoup money from an employee because of the overpayment of wages or expenses, or because of an employee's overextension of a monthly draw. Requiring an employer to go to court in every situation in which an employee disputes the alleged overpayment would undercut the employer's position and foster instability in the workplace. The employer cannot always be faulted for self-help when it attempts to settle a dispute with the employee and, failing that, takes action. The statute does not reach every potential deduction by an employer from an employee's wages.

¶ 34.   Wisconsin Stat. § 103.455 (1995–96) reads in part:

> Deductions for faulty workmanship, loss, theft or damage. No employer shall make any deduction from the wages due or earned by any employe, who is not an independent contractor, for defective or

faulty workmanship, lost or stolen property or damage to property, unless the employe authorizes the employer in writing to make such deduction or unless the employer and a representative designated by the employe shall determine that such defective or faulty work, loss or theft, or damage is due to worker's negligence, carelessness, or wilful and intentional conduct on the part of such employe, or unless the employe is found guilty or held liable in a court of competent jurisdiction by reason thereof. If any such deduction is made or credit taken by any employer, that is not in accordance with this section, the employer shall be liable for twice the amount of the deduction or credit taken in a civil action brought by said employe.

¶ 35. The statute speaks of "defective or faulty workmanship, lost or stolen property or damage to property." The present case does not involve this type of work-related loss. The disagreement about an alleged overpayment of expenses is in essence a dispute about compensation, historically a flashpoint in employer-employee relations. If we were to repudiate the employer's position on these facts, we would have difficulty finding a sensible stopping point in future cases. *Cf. Tatge v. Chambers & Owens, Inc.*, 219 Wis. 2d 99, 579 N.W.2d 217 (1998).

¶ 36. The statute speaks of prohibiting a deduction from wages due or earned unless (1) the employee authorizes the employer in writing to make such a deduction; or (2) the employer and a representative of the employee determine that the "loss" is due to the "worker's negligence, carelessness, or wilful and intentional conduct"; or (3) the employee is found guilty or held liable in a court of competent jurisdiction. Here, Mohr refused to sign anything, as was his right. He and his representative refused to concede anything. Batter-

ies Plus never contended that the overpayment was his fault and, naturally, he would not have conceded that it was. He also denied that he owed anything. Consequently, the only option that Batteries Plus had left was to go to court. The record shows that Mohr's attorney told Batteries Plus that it would have to drop that option, or Mohr would consider himself fired.[8] Because of the jury's verdict, we take as a fact that Batteries Plus discharged Mohr. Undeniably, the discharge came after Batteries Plus received his attorney's blunt communication. A discharge under these highly strained circumstances, in which the employer is given no option except to sue the employee for what the employer believes is an overpayment of expenses, is not a wrongful discharge that violates the spirit of Wis. Stat. § 103.455.

¶ 37. The statute also provides that if a "deduction is made or credit taken" in contradiction of this section, "the employer shall be liable for twice the amount of the deduction or credit." Here, the employer did not take the deduction or credit, yet when it went to court to recover the alleged overpayment, it was assessed damages of $60,000 for wrongful dis-

---

[8] A June 14, 1996, letter to Batteries Plus from Mohr's attorney stated in part:

Clinton Mohr hereby offers to be employed by Batteries Plus as a Commercial Sales Specialist as follows:

1. That Batteries Plus agrees not to attempt to collect or assert any alleged overpayments of commissions and expenses to Clinton Mohr. General Release would be signed by both parties.

. . . .

If Batteries Plus does not elect to have Clinton Mohr continue to be employed as a Commercial Sales Specialist under the above conditions, you are hereby notified that Clinton Mohr will consider himself fired, effective July 1, 1996.

charge—$37,000 more than it would have been assessed if it had explicitly violated the statute.

¶ 38. Mohr argues that his discharge is contrary to the spirit of the statute, but we find his situation falls outside the terms of the statute. The more a court moves beyond the terms of the statute, the more encompassing the "narrow" public policy exception becomes. "Public policy considerations invariably are vague and beg judicial caution." *Strozinsky*, 237 Wis. 2d at ¶ 38. A "discharge must clearly contravene the public welfare and gravely violate paramount requirements of public interest," *Wandry*, 129 Wis. 2d at 43 (citing *Brockmeyer*, 113 Wis. 2d at 573–74), before it qualifies as a wrongful discharge under established law.

## CONCLUSION

¶ 39. Our task in this case is to apply the precedent to the facts. We conclude that the *Wandry* case is good law but that this case presents different facts and would extend the spirit of the statute beyond *Wandry* into a fact-intensive dispute about compensation. We conclude that Mohr has not shown a fundamental and well-defined public policy that prevented Batteries Plus from discharging him under these circumstances. Accordingly, the decision of the court of appeals is reversed.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶ 40.   SHIRLEY  S.  ABRAHAMSON,  CHIEF
JUSTICE *(dissenting)*. The crux of the present case is
that Batteries Plus asserts it overpaid Clinton Mohr
approximately $11,500, Mohr refused to agree to Bat-
teries Plus deducting approximately $11,500 from his
paychecks, and Mohr asserts that he was then wrong-
fully discharged. The court of appeals affirmed the
judgment of the circuit court, based on the jury's find-
ing that Mohr had not been overpaid and had indeed
been underpaid, as well as wrongfully discharged. I
would affirm the decision of the court of appeals.

¶ 41.   As to the wrongful discharge, the court of
appeals concluded as a matter of law that Mohr identi-
fied a fundamental and well-defined public policy that
Batteries Plus had violated, namely, that an employer
may not terminate employment when an employee ref-
uses to agree to have disputed amounts deducted from
his or her wages. I agree with the court of appeals.

¶ 42.   Wisconsin Stat. § 103.455 expresses a fun-
damental and well-defined public policy that governs
this case. The court has stated that Wis. Stat. § 103.455
proscribes economic coercion by an employer upon an
employee and ensures that employees do not unfairly
bear an employer's costs of operating a business.[1] The
public policy is to prohibit an employer from using self-

---

[1] *Wandry v. Bull's Eye Credit Union*, 129 Wis. 2d 37, 47, 384
N.W.2d 325 (1986) (Section 103.455 "articulates a fundamental
and well-defined public policy proscribing economic coercion by
an employer upon an employee to bear the burden of a work-
related loss . . ."); *Erdman v. Jovoco, Inc.*, 181 Wis. 2d 736, 769,
512 N.W.2d 487 (1994) ("The objective of [§ 103.455] is violated
either by an employer who requires an employe to be bound by
deductions before any claimed loss or indebtedness arises or by
an employer who requires an employe to agree to the deductions
and release all claims as a condition for receiving compensation,

help to settle a financial dispute with an employee without the consent of the employee or a court order.

¶ 43. Everyone agrees that Wis. Stat. § 103.455 does not cover the precise fact situation involved in this case. But that conclusion is not determinative of the present case. This court has repeatedly stated that "[t]he public policy of a statute is not limited to the circumstances described in the statute. The public policy of a statute may be invoked in contexts outside the precise reach of the statute."[2] The majority opinion acknowledges this oft-stated rule but refuses to apply it here.

¶ 44. The majority opinion, contrary to the policy embodied in Wis. Stat. § 103.455, favors allowing an employer to use its economic "leverage" to recoup money from an employee to save the employer the trouble of suing the employee.[3] The majority opinion thus allows an employer to deduct disputed amounts from an employee's paycheck and puts the onus on the employee to sue the employer to recover full compensation. Why is the majority opinion willing to shift the burden to employees to sue an employer to recover illegitimate wage deductions when the public policy embodied in Wis. Stat. § 103.455 is that the employer may not deduct disputed amounts from a paycheck?

¶ 45. Like the court of appeals, I would affirm the circuit court judgment based on the jury verdict in this case, which concluded that Batteries Plus's discharge

---

without giving the employe an opportunity to challenge the deductions.").

[2] *See Wandry*, 129 Wis. 2d at 46–47; *see also Strozinsky v. Sch. Dist. of Brown Deer*, 2000 WI 97, ¶ 43, 237 Wis. 2d 19, 44, 614 N.W.2d 443 ("a discharge can violate the spirit, if not the exact letter, of a statutory provision").

[3] *See* majority op. at ¶ 33.

of Clinton Mohr violated the public policy prohibiting an employer from extracting repayment of disputed expenses from an employee by means of the economic coercion of the paycheck.

¶ 46.   For the reasons set forth, I dissent.

¶ 47.   I am authorized to state that Justices WILLIAM A. BABLITCH and ANN WALSH BRADLEY join this opinion.