Kevin QUINN, Plaintiff–Appellant,

v.

**OVERNITE TRANSPORTATION COMPANY, Defendant–Appellee.**

No. 00–2743.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 2001.

Decided Nov. 21, 2001.

Before FLAUM, Chief Judge, BAUER, and EVANS, Circuit Judges.

## ORDER

Kevin Quinn, aided by counsel as amicus curiae, appeals the district court's dismissal of his complaint against his former employer, Overnite Transportation Company. Quinn worked 14 years as a truck driver for Overnite but was fired in January 1998 for what the company said was insubordination.

Because the district court dismissed Quinn's complaint under Federal Rule of Civil Procedure 12(b)(6), we must accept his factual allegations as true. *See Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 694 (7th Cir.1999). According to the amended complaint, Quinn was driving to Overnite's terminal in Milwaukee, Wisconsin on the morning of January 29, 1998, when he stopped to rest near a toll booth in Waukegan, Illinois. Tom Morton, Overnite's Regional Vice President, was at the toll stop and spotted Quinn in the truck, allegedly just "resting his eyes." Morton confronted Quinn, yelled at him, and accused him of "delaying freight." Morton then demanded to meet with Quinn upon his return to Milwaukee.

Quinn returned to the Milwaukee terminal but did not meet with Morton as instructed. Instead, he immediately placed a phone call to Overnite's safety supervisor to discuss the incident. During their conversation, Quinn told the supervisor that Morton's anger stemmed from Quinn's previous threat to sue Overnite for harassment by pro-union employees at the company. After the phone call, Morton demanded to meet with Quinn, but Quinn refused, telling Morton that he would meet with him as soon as he calmed down.

Later in the day, Quinn met with terminal manager Don Anderson and operations manager Bob Lavender. During the meeting, Anderson instructed Quinn to sign a letter of insubordination, which would lead to an indefinite suspension. Quinn stated that he would sign the letter only in the presence of a union representative. Anderson refused to call a union steward and fired Quinn.

Quinn, without a lawyer, filed a complaint against Overnite in Milwaukee County Circuit Court alleging fraudulent misrepresentation, defamation, wrongful discharge, and intentional infliction of emotional distress. Overnite removed the case to federal court (based on diversity jurisdiction) and moved to dismiss the complaint under Rule 12(b)(6). Quinn did not respond to Overnite's motion, and the district court dismissed the case.

Three days later, Quinn submitted a letter to the district court requesting that the case be reopened. Attached to the letter was a brief opposing Overnite's motion to dismiss, and an undated affidavit that Quinn had signed and submitted to the National Labor Relations Board. The court construed the letter as a motion to amend judgment under Federal Rule of Civil Procedure 59(e) and denied the motion.

Quinn responded with another letter to the district court, again requesting that the case be reopened because he had mistakenly believed that the case remained in state court. The court treated this letter as a motion for relief from judgment under Federal Rule of Civil Procedure 60(b) and vacated its previous dismissal order. The court concluded that the opposition brief (along with the affidavit) filed by Quinn in support of his Rule 59(e) motion should be treated as a response to Overnite's motion to dismiss, and ordered Overnite to file a reply. After Overnite replied, the court again dismissed the complaint but allowed Quinn to amend his claims for defamation and wrongful discharge. Quinn responded with a "Memorandum in Support to Reinstate," which the court treated as an amended complaint. On June 9, 2000, the court dismissed this amended complaint, concluding that Quinn did not state cognizable claims of defamation or wrongful discharge under Wisconsin law.

Amicus curiae challenges the district court's dismissal of Quinn's wrongful discharge, defamation, and emotional distress claims. As a preliminary matter, amicus curiae argues that the court erred by not considering Quinn's affidavit as incorporated into his amended complaint. Consequently, amicus suggests, the court failed to consider all the facts necessary to support Quinn's claims. In the affidavit, Quinn describes union members harassing

him because he refused to join their ranks. According to Quinn, Overnite consented to this harassment, prompting him to seek the advice of Jim Lucianna, a friend who claimed to be an attorney. Unbeknownst to Quinn, Lucianna drafted a complaint claiming $3 million in damages for permitting the harassment. Lucianna sent the complaint to Overnite but never filed it. Quinn claims that an Overnite human resource representative suggested to him that the company would "do what it had to do" in response to the complaint. Quinn also claims that Overnite was aware that a union member falsely reported to police in 1997 that Quinn was driving under the influence of drugs.

It should be noted that the district court went to great lengths to ensure that Quinn's claims be adjudicated on their merits; the court afforded him several opportunities to revive his claims and considered the affidavit, at least as part of Quinn's response opposing Overnite's first motion to dismiss. But even if the court erred by failing to expressly consider his affidavit as part of the amended complaint, the facts presented therein do not remedy the flawed nature of his claims.

Wisconsin law applies to this dispute. See Grundstad v. Ritt, 166 F.3d 867, 870 (7th Cir.1999). In Wisconsin, an employer is liable for wrongful discharge if it fires an employee for conduct that is consistent with a clear and compelling public policy. Batteries Plus, L.L.C. v. Mohr, 244 Wis.2d 559, 628 N.W.2d 364, 370 (Wis.2001); Wandry v. Bull's Eye Credit Union, 129 Wis.2d 37, 384 N.W.2d 325, 327 (Wis.1986); Brockmeyer v. Dun & Bradstreet, 113 Wis.2d 561, 335 N.W.2d 834, 841 (Wis. 1983). The employee has the burden of demonstrating that the discharge violated a fundamental and well-defined mandate of public policy. Mohr, 628 N.W.2d at 369. The district court here concluded that

Quinn did not state a claim for wrongful discharge because he failed to allege that he was fired for refusing a command to violate a public policy as embodied in statutes, constitutions, or administrative rules. An employee who is fired for refusing to violate the law certainly states a claim under Wisconsin law, but the cause of action is broader than described by the district court-it also encompasses allegations that an employer fired an employee for conduct that is consistent with a clear and compelling public policy.

■ Quinn's amended complaint (nor affidavit for that matter) fails to identify a clear and compelling public policy under Wisconsin law. Amicus curiae now argues that Overnite violated various public policies. First, that Overnite terminated Quinn because he demanded that the company protect him from union harassment under Wisconsin's Employee Peace Act, Wis. Stat. §§ 111.01(2), 111.04, 111.06. Amicus curiae also cites Wis. Stat. § 134.01, which prohibits conspiracies to injure another person's professional reputation. These policies, however, are not the types of public concerns that have been recognized by Wisconsin courts as exceptions to the at-will-employment doctrine. In *Mohr*, 628 N.W.2d at 372, the Wisconsin Supreme Court traced the history of the public-policy exception and noted that each application of the exception featured a well-defined policy promoting a clear public interest. *See Strozinsky v. Sch. Dist. of Brown Deer*, 237 Wis.2d 19, 614 N.W.2d 443 (Wis.2000) (holding that public-policy exception applies where employee harassed for accurately reporting tax information in compliance with tax law); *Hausman v. St. Croix Care Ctr.*, 214 Wis.2d 655, 571 N.W.2d 393 (Wis.1997) (exception applies where employees at nursing home terminated after reporting abuse as required by statute); *Kempfer v.*

*Automated Finishing, Inc.*, 211 Wis.2d 100, 564 N.W.2d 692 (Wis.1997) (exception applies where trucker fired after refusing employer's command to operate vehicle without a valid license); *Winkelman v. Beloit Mem'l Hosp.*, 168 Wis.2d 12, 483 N.W.2d 211 (Wis.1992) (exception applies where nurse's continued employment was conditioned on violating certain provision of the Wisconsin Administrative Code); *Wandry*, 384 N.W.2d at 327 (employee's termination for refusing to reimburse credit union after she unknowingly cashed a forged check violated public policy proscribing economic coercion).

In contrast, Wisconsin has not recognized public-policy exceptions in disputes involving "personnel problems or employer-employee tensions within the workplace." *Mohr*, 628 N.W.2d at 372; *see also Tatge v. Chambers & Owen, Inc.*, 219 Wis.2d 99, 579 N.W.2d 217 (Wis.1998) (refusal to sign nondisclosure and noncompete agreements did not give rise to a cause of action for wrongful discharge); *Schultz v. Prod. Stamping Corp.*, 148 Wis.2d 17, 434 N.W.2d 780 (Wis.1989) (no public-policy exception where employer did not disclose details of a pension plan before requiring employees to join the plan as a condition of employment); *Bushko v. Miller Brewing Co.*, 134 Wis.2d 136, 396 N.W.2d 167 (Wis.1986) (holding that conduct by employee that merely promoted the public interest in safety and proper hazardous waste disposal and did not involve the employer forcing the employee to break the law did not provide a sufficient public policy); *Scarpace v. Sears, Roebuck & Co.*, 113 Wis.2d 608, 335 N.W.2d 844 (Wis.1983) (upholding termination of employee who suffered non-work related injuries that prevented her from working all of her scheduled hours).

The dispute in this case is a private employee-employer dispute for which no

Wisconsin public-policy exception has been recognized. Quinn does not claim that he was fired for acting in furtherance of an identified public good. For example, he was not fired for refusing to speed to deliver his goods. Overnite did not ask Quinn to deliver illegal drugs and then fire him because he refused; nor did it terminate him for trying to report safety violations. Instead, Quinn alleges that Overnite fired him for threatening to file a lawsuit and for creating workplace tension through his resistance to a union. The "public policies" identified by amicus curiae lack a "public interest" component and have not been recognized by Wisconsin courts as a bases for rebutting the state's strong presumption of at-will employment. "In traditional employment relations, the fact that a discharged employee has been treated unfairly or even with a tinge of bad faith is simply not enough to invalidate the employer's decision to discharge for 'no cause, or even for cause morally wrong.'" *Mohr*, 628 N.W.2d at 372 (quoting *Brockmeyer*, 335 N.W.2d at 837).

■ As another possible public-policy exception, amicus curiae also identifies Wis. Stat. § 134.03, which prohibits employers from intimidating employees from performing lawful work. Section 134.03 might form the basis of a public-policy exception, but Quinn does not allege facts that support such a claim. He does not identify what "lawful work" Overnite tried to prevent him from performing. His refusal to join a union was incidental to his job duties; Overnite did not pressure him to act contrary to the public good.

To state a claim under Wisconsin defamation law, Quinn must allege (1) a false statement, (2) communicated by speech, conduct, or writing to a person other than the person defamed, and (3) that the statement is unprivileged and tends to harm his reputation so as to lower him in the eyes of the community. *See Torgerson v. Jour-*

*nal/Sentinel, Inc.,* 210 Wis.2d 524, 563 N.W.2d 472, 477 (Wis.1997); *Kennedy v. Children's Serv. Soc'y of Wis.,* 17 F.3d 980, 983 (7th Cir.1994). The amended complaint satisfies the first two elements of the cause of action by alleging that Morton falsely told other managers that he delayed freight-a false statement told to others. As for the third element, the district court prematurely concluded that this communication was conditionally privileged under Wisconsin law because Overnite's managers are agents of the same company who share a common interest, *see Zinda v. La. Pac. Corp.,* 149 Wis.2d 913, 440 N.W.2d 548, 553 (Wis.1989). The court dismissed the case under Rule 12(b)(6) because the complaint alleged no facts suggesting that the privilege should be lost. Under Wisconsin law, however, conditional privilege is an affirmative defense. *See, e.g., Wisconsin v. Gilles,* 173 Wis.2d 101, 496 N.W.2d 133, 138 (Wis.Ct.App.1992). Therefore, the court's dismissal on this ground may have been premature, because the privilege can be lost-Quinn need not plead facts that defeat the privilege.

■ But the court also cited another ground for dismissing this claim: Quinn failed to allege facts supporting the third element of the cause of action-namely, that Overnite harmed his reputation. Instead, Quinn focused on his job loss, certainly am injury, but not a harm to reputation compensable under defamation law. Moreover, a single accusation of tardiness does not rise to the level of actionable harm to reputation. *See Liberty Mut. Fire Ins. Co. v. O'Keefe,* 205 Wis.2d 524, 556 N.W.2d 133, 136 (Wis.Ct.App.1996) (holding that in business setting, imputation must charge dishonorable, unethical, unlawful, or unprofessional conduct). Therefore, the court properly dismissed Quinn's defamation claim.

Finally, to state a claim for intentional infliction of emotional distress, Quinn must

allege that (1) Overnite intended to cause emotional distress, (2) Overnite's conduct was extreme and outrageous, (3) Overnite's conduct was the cause-in-fact of his injury, and (4) he suffered an extreme disabling emotional response to Overnite's conduct. *See Alsteen v. Gehl,* 21 Wis.2d 349, 124 N.W.2d 312, 318 (Wis.1963). Quinn alleged that his boss yelled at him-conduct that fails to qualify as extreme and outrageous. But even if Morton acted outrageously by yelling at Quinn, Quinn did not allege that he suffered "an extreme disabling emotional response." Thus, Quinn's claim for intentional infliction of emotional distress was properly dismissed.

The judgment of the district court is AFFIRMED. The court thanks amicus curiae-attorney Randall Schmidt, who wrote the brief, and James Madigan, a Bigelow Teaching Fellow at the University of Chicago Law School, who argued the case-for their excellent submissions to the court.