NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 22, 2013[*]
Decided March 25, 2013

**Before**

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-2029

| | |
|---|---|
| MARGARET BACH, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 11-C-0444 |
| CENTOCOR ORTHO BIOTECH, INC. and JOHNSON & JOHNSON, *Defendants-Appellees.* | Charles N. Clevert, Jr., *Chief Judge.* |

**O R D E R**

Margaret Bach, a single mother of a disabled child, sued her former employer, Centocor Ortho Biotech, Inc., and its holding company, Johnson & Johnson, for unlawful employment practices under federal and state law. The district court granted the defendants' motion to dismiss for failure to state a claim. It also denied Ms. Bach's requests

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

to file an untimely response to that motion and amend her complaint. Because neither Ms. Bach's original nor proposed complaint states a valid claim, we affirm.

Ms. Bach alleges that while she worked for Centocor as a sales agent from 2001 until it fired her in 2009, her managers mistreated her in three general ways. First, they asked her to sell one of its drugs, Remicade, unlawfully. They requested, for example, that she sell Remicade to a children's hospital though the drug had not been approved for children. They also told her to spread false information about Remicade. She alleged that "retaliation ensued" after she reported these improprieties to Centocor's Healthcare Compliance Department. She adds that three company employees promised that Centocor would not retaliate against her for her reports.

Ms. Bach also alleged that Centocor refused to compensate her properly. It refused to reimburse her fully for law school tuition, paying her only an agreed-upon, partial sum. Also, after she took approved time off to attend a court hearing about her disabled son, the company never paid her for the additional work that she completed after hours.

Finally, Ms. Bach alleges that Centocor regularly violated its own company policies. It refused to grant her flexible work hours, failed to guarantee her job, and evaluated her unfairly. She relies on the company's policies regarding performance reviews, scheduling, and job security. These policies advise: "The Company reserves the right to modify, suspend, change, or terminate this policy at any time. This policy does not create any contractual rights or obligations, whether express or implied" and does not "alter the employee's at-will status with the company." Ms. Bach also relies on the parent company's "credo," which offers employees "a sense of security in their jobs," assures that the company is "mindful of ways to help our employees fulfill their family responsibilities," and hopes that "[e]mployees feel free to make suggestions and complaints."

Ms. Bach sued Centocor and Johnson & Johnson in state court, asserting claims under federal and state laws. The defendants removed the case to federal court and moved to dismiss the suit for failure to state a claim. Two weeks after time for Ms. Bach to respond to that motion, Ms. Bach asked for more time, explaining that other obligations prevented a timely response. A month later, Ms. Bach replied to the defendants's motion and also moved to amend her complaint to add new legal theories, including a claim that the defendants violated federal employment laws by "retaliating" against her for having a disabled child. *See* Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

The district court ruled on the three pending motions. It denied Ms. Bach's request to file a late response, observing that Ms. Bach voluntarily prioritized other obligations

ahead of this case. The court then dismissed the complaint as legally deficient and denied Ms. Bach's motion to amend as futile. The court reasoned that Ms. Bach's complaints fail to state claims for several reasons: she concedes that she failed to file the administrative charges required for her Title VII and ADA claims, and other claims were untimely, implausible, lacked a private right of action, or were unsupported by the employment policies that Ms. Bach attached to her amended complaint.

We note three preliminary matters before addressing the merits of the appeal. First, the defendants should have brought their motion to dismiss under Rule 12(c) because it relied on affirmative defenses, such as the administrative-filing requirement for Title VII and ADA, and untimeliness. *See Yassan v. J. P. Morgan Chase & Co.*, No. 12-2313, 2013 WL 717481, at * 11 (7th Cir. Feb. 28, 2013). But this procedural wrinkle does not affect our review. The only affirmative defense we need to address on appeal is the administrative-filing requirement, and Ms. Bach agrees to the facts underlying the defense. Second, the motion to dismiss relied on exhibits that describe Centocor's employment policies. But Ms. Bach referred to them in her complaint, attached them to her amended complaint, and argues that they are dispositive. So the court's reliance on them was proper. *See Yassan*, 2013 WL 717481 at *11. Third, Ms. Bach contends that the district court should have allowed her extra time to oppose the motion to dismiss and granted her leave to amend. Our review of both the court's dismissal of the original complaint and its conclusion that the proposed amendment is futile is de novo. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). We will consider the arguments that Ms. Bach advances here or presented in the district court to support her original complaint and her proposed amendments; accordingly, any challenge to the procedural rulings is obviated.

On the merits of the appeal, Ms. Bach first argues that Centocor retaliated against her under the ADA for having a disabled child. She argues that—despite not filing administrative charges and without specifying the nature of the retaliation, her claim can proceed because she need not succeed on an underlying discrimination claim to assert a retaliation claim. But whether her ADA claim is for discrimination or retaliation, Ms. Bach still needed to file a timely administrative charge before filing suit. *See Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001); *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998). Accordingly this claim fails.

Ms. Bach next argues that on two occasions Centocor unlawfully refused to compensate her. First, Ms. Bach asserts that Centocor unlawfully denied her a full tuition reimbursement. She appears to invoke a Wisconsin statute that requires employers to pay their employees each month for the previous month's earnings. *See* Wis. Stat. § 109.03. But she admits that she and Centocor agreed that it would pay her for only partial tuition, so

she has waived any dispute over the amount. That leaves only a possible complaint about timing, but Ms. Bach does not contend that Centocor failed to timely pay her the stipulated reimbursement. So she has failed to state a claim under section 109.03. Her second wage claim is based on the Family and Medical Leave Act, 29 U.S.C. § 2615. She maintains that Centocor interfered with her rights under the Act by refusing her a full day's pay when she took the morning off to attend a court hearing for her disabled son but made up the hours by working that evening. *See* 29 U.S.C. § 2615(a). But the Act provides only for *unpaid* leave during regular work hours, *see* 29 U.S.C. § 2612(c); *Franzen v. Ellis Corp.*, 543 F.3d 420, 428 (7th Cir. 2008). Ms. Bach's claim for compensation for her evening work runs into the obstacle that, according to the unrebutted evidence, the company's paid, working hours were 8:30 a.m. to 5:00 p.m. She cannot recover wages for time volunteered outside of standard working hours.

Ms. Bach next maintains that she stated valid claims for breach of contract based on Centocor's employment policies, which, she argues, it violated by firing her and denying her flexible hours. We disagree. Under Wisconsin law, employment is terminable at will unless the employment terms or circumstances "clearly manifest" the parties intent to bind each other to a different relationship. *See Batteries Plus, LLC v. Mohr,* 628 N.W.2d 364, 368 (Wis. 2001); *Forrer v. Sears, Roebuck & Co.,* 153 N.W.2d 587, 589–90 (Wis. 1967); *Olson v. 3M Co.,* 523 N.W.2d 578, 589 (Wis. Ct. App. 1994). Although company policies and handbooks can abrogate the at-will presumption and create other rights, *see Ferraro v. Koelsch*, 368 N.W.2d 666, 672 (Wis. 1985) (employee handbook); *Garvey v. Buhler*, 430 N.W.2d 616, 618–19 (Wis. Ct. App. 1988) (company policy), Ms. Bach has not identified a company policy here that promises a term of employment or flexible hours. In fact, the policies that she cites expressly disclaim any such promises and reserve to Centocor the right to change its policies and discharge employees at will. *See Helland v. Froedtert Mem'l Lutheran Hosp.*, 601 N.W.2d 318, 322 (Wis. Ct. App. 1999) (rejecting contract claim based on handbook marked subject to change); *Wolf v. F&M Banks*, 534 N.W.2d 877, 882–83 (Wis. Ct. App. 1995) (rejecting contract claim based on signed "Code of Ethics" setting conduct guidelines); *Olson*, 523 N.W.2d at 589–90 (rejecting contract claim based on handbook subject to change).

Ms. Bach responds that the Johnson & Johnson "credo" establishes the contractual right to her job. The credo expresses the parent company's desire that employees have a "sense of security in their jobs." But this merely states an aspiration, not a contractual relationship. *See Krug v. Zeuske,* 544 N.W.2d 618, 623 (Wis. Ct. App. 1996); *Goetz v. State Farm Mut. Auto. Ins. Co.*, 142 N.W.2d 804, 807 (Wis. 1966). Ms. Bach replies that other documents might support her contract claim. But she does not allege that in any document

the company specifically promised to contradict its written *refusal* to promise, as set forth in company's policy statements that she invoked in the district court.

Ms. Bach next contends that she stated a valid claim for wrongful discharge under Wisconsin common law. She identified in her proposed amended complaint various federal statutes that she contends Centocor violated by firing her, and because Centocor violated those public policies, she concludes that her discharge was unlawful under state law. To state a claim for wrongful discharge under the narrow, "public policy" exception to the employment-at-will doctrine, Ms. Bach had to identify in her complaint "a fundamental and well-defined public policy," and allege that she was fired in order for her employer to violate that policy. *See Batteries Plus*, 628 N.W.2d at 369; *Brockmeyer v. Dun & Bradstreet*, 335 N.W.2d 834, 840, 842 (Wis. 1983). But none of the statutes cited in her proposed amended complaint can ground a wrongful-discharge claim because the statutes provide for their own remedies, and when "the legislature has created a remedy for wrongful discharge, that remedy is exclusive." *Brockmeyer*, 335 N.W.2d at 842 n.17; *see Larson v. City of Tomah*, 532 N.W.2d 726, 729 (Wis. 1995); *Repetti v. Sysco Corp.*, 730 N.W.2d 189, 194 (Wis. Ct. App. 2007).

Finally, Ms. Bach maintains that her proposed amended complaint states a claim for promissory estoppel. She alleges that three company employees promised that the defendants would protect her from retaliation for reporting legal violations. But Ms. Bach must allege that the employees's promises induced her to act. *See Reddinger v. SENA Severance Pay Plan*, Nos. 10-2361 & 10-2362, 2013 WL 599521, at *5 (7th Cir. Feb. 19, 2013) (applying Wisconsin law); *Hoffman v. Red Owl Stores, Inc.*, 133 N.W.2d 267, 275 (Wis. 1965); *McLellan v. Charly*, 758 N.W.2d 94, 107–08 (Wis. Ct. App. 2008). Here, Ms. Bach does not allege that promises of protection induced her to report the violations; rather, *after* she alleges that she reported the violations, she asserts that she was assured no retaliation.

We have considered Ms. Bach's other arguments, and they do not merit further discussion. The judgment of the district court is **AFFIRMED**.