# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2313

FARROKH YASSAN,

*Plaintiff-Appellant*,

*v.*

J. P. MORGAN CHASE and COMPANY, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:12-cv-01298—**Suzanne B. Conlon**, *Judge.*

ARGUED OCTOBER 26, 2012—DECIDED FEBRUARY 28, 2013

Before EASTERBROOK, *Chief Judge,* and CUDAHY and
TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Farrokh Yassan brought suit in
the Cook County Circuit Court against his former em-
ployer, J.P. Morgan Chase & Co. (hereinafter, Chase),
approximately nineteen months after the termination of
his employment. In his complaint, Yassan alleged that
Chase had terminated him in violation of both the
Age Discrimination in Employment Act (ADEA),

29 U.S.C. § 621 *et seq.*, and public policy. Yassan further alleged that Chase had committed fraud against him by inducing him to sign a severance agreement through "explicit and false representation[s]."

Shortly after filing suit—but before Chase's deadline to answer the complaint—Yassan's counsel failed to appear at a status hearing. As a result, the Cook County Circuit Court judge dismissed the case for want of prosecution. Unaware of this dismissal, Chase filed a notice to remove the case to federal district court the following day. The parties brought this potential removal problem to the district court's attention, but the district court concluded that the removal after dismissal constituted a procedural defect that had been waived by Yassan's failure to object within thirty days. The district court then granted Chase's motion to dismiss under Fed. R. Civ. P. 12(b)(6), finding that Yassan had failed to state a claim. Yassan filed a timely appeal with our court, arguing that the district court's dismissal was improper. Although Chase's removal after dismissal for want of prosecution creates a jurisdictional question a little more complicated than the district court recognized, we ultimately find that removal of the case to federal court was properly accomplished. With jurisdiction before both the district court and our court secure, we affirm the decision of the district court.

# I

Because the district court decided this case on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, we review Yassan's

complaint *de novo*, construing it in the light most favorable to Yassan. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). At the time of his termination, Yassan was employed by Chase on an at-will basis as a Field Operation Technician. Admittedly, Yassan's termination on May 14, 2010 was not wholly unexpected; Yassan acknowledges in his complaint that he began receiving negative performance reviews as early as 2008 (although he argues that these negative reviews were an unmerited "response to [Yassan's] practice of calling management's attention to the unfair workplace practices engaged in by [his] management team"). Still, Yassan alleges in his complaint that Chase told him his "position was being eliminated for a lack of work." Under the impression that his termination was not personal, but simply due to lack of work, Yassan agreed to sign a release in exchange for twenty-five weeks of severance pay from Chase.

The terms of the release discharged Chase from "all liability for any claims or potential claims relating to [Yassan's] employment," including (but not limited to) "any claims under . . . the Age Discrimination in Employment Act of 1967 . . . [and] any claims under . . . tort (including . . . wrongful or abusive discharge . . . [and] fraud)." The release explicitly defined the term "claims" to include "claims I know about and claims I do not know about, as well as the continuing effects of anything that happened before I sign below." Certainly, the release drafted by Chase was broad, but Chase allowed Yassan forty-five calendar days to evaluate it, consult an attorney (if desired), and decide whether to sign it.

Moreover, the terms of the release permitted Yassan to change his mind, allowing Yassan to revoke the release within seven calendar days of signing it.

Yassan signed the release on May 13, 2010, forty-three calendar days after Chase gave it to him, and never attempted to revoke the agreement thereafter. (Yassan now asserts that "he is ready, willing, and able to [revoke and] tender the full amount of the severance settlement" back to Chase.) Two months after signing the release, however, Yassan learned that another Chase employee, Spiro Maros, had been offered Yassan's former job. This discovery angered Yasaan; while his termination from Chase initially appeared to be simply part of a reduction in force, it now seemed much more personal—that is, discriminatory and retaliatory. As a result, Yassan filed the present suit in Cook County Circuit Court on December 15, 2011. Chase was served with Yassan's complaint on January 25, 2012, which gave Chase until February 23, 2012 to respond.

On February 8, 2012, Yassan's attorney did not appear for a status hearing, leading the Cook County Circuit Court judge to dismiss Yassan's case for want of prosecution on February 22, 2012—the day before Chase's deadline to respond. On the day of Chase's deadline, unaware that Yassan's case had been dismissed for want of prosecution, Chase filed a notice of removal in federal district court. Only later did the parties learn that the dismissal order and the notice of removal had "crossed in the mail." The parties pointed out this timing issue, which they referred to as a potential

removal defect, to the district court judge, but the district court judge characterized the situation as a mere "procedural defect." Furthermore, since "neither party object[ed] to the case proceeding" in federal district court, and since the "state court dismissal d[id] not affect [the federal court's] subject matter jurisdiction, which [wa]s supplied by 28 U.S.C. § 1331 based on the ADEA claim," the district court deemed this "procedural defect" waived under 28 U.S.C. § 1447(c). Finding that it had jurisdiction to adjudicate Yassan's case, the district court turned to Chase's motion to dismiss, which Chase had filed on March 1, 2012. On May 3, 2012, the district court dismissed the case for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because it found that Yassan, by signing the release, had discharged Chase from all ADEA, wrongful discharge, and fraud liability related to Yassan's employment.[1] Even if Chase had

---

[1] Note that Chase had filed a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The district court never addressed Chase's 12(b)(1) motion because it found adequate grounds to dismiss the case under 12(b)(6). The district court's failure to address jurisdiction before addressing the merits constituted error. In *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998), the Supreme Court held that it was improper for courts to skip over jurisdictional issues in order to reach the merits, even when "the merits question is more easily resolved." Still, had the district court addressed Chase's motions to dismiss in the proper order, we find that it should have denied Chase's 12(b)(1) motion (and moved onto Chase's

(continued...)

disingenuously represented that Yassan's termination was due to "lack of work," the district court found that such a representation fell squarely under the terms of the release signed by Yassan. Citing New York law—which, according to the release's choice-of-law provision (and both parties agree), governs this case—the district court pointed out:

> A party that settles a claim of fraudulent induce-ment cannot revisit that settlement by asserting that the alleged defrauding party did not make a full disclosure of its own fraud. This is so even if the defrauding party has an independent duty to disclose, and even when the release was exe-cuted without knowledge of certain specific frauds.

---

[1] (...continued)
12(b)(6) motion, as it did already). Chase argues that Yassan's fraud claim should be dismissed for lack of jurisdiction because it is pre-empted by the Illinois Human Rights Act (IHRA). This argument lacks merit for three reasons. First, 775 Ill. Comp. Stat. 5/8-111, the section of the IHRA that allegedly pre-empts Yassan's fraud claim, governs the jurisdiction only of "court[s] of this state"—not federal courts. *Cf. Rodriguez v. Cook Cnty., Ill.*, 664 F.3d 627, 632 (7th Cir. 2011) (reminding courts that "Congress, not the states, determines the jurisdic-tional authority of the federal courts"). Second, both parties agree that New York, not Illinois, law governs Yassan's case. Third, even if Illinois law did govern his case, Yassan does not allege a violation of the IHRA in his complaint. The IHRA prohibits age discrimination, but Yassan only alleges a viola-tion of the ADEA in his complaint.

*Nycal Corp. v. Inoco PLC*, 988 F. Supp. 296, 306 (S.D.N.Y. 1997) (citations omitted), *aff'd*, No. 98-7058, 166 F.3d 1201 (2d Cir. Dec. 9, 1998).

After the district court's dismissal for failure to state a claim, Yassan filed a timely appeal with this court. We review *de novo* the district court's determination that it had subject matter jurisdiction over Yassan's case. *Village of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 782 (7th Cir. 2008). Because we conclude in the next section that the district court did indeed have jurisdiction, we review Yassan's case on the merits *de novo* as well, construing Yassan's complaint in the light most favorable to him, accepting all well-pleaded facts as true, and drawing all inferences in his favor. *Tamayo*, 526 F.3d at 1081.

## II

We are obliged to inquire into the existence of federal jurisdiction whenever any concerns arise. *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 447 (7th Cir. 2000). The parties were apparently unconcerned about the existence of federal court jurisdiction when the matter came to us on appeal, but at oral argument, we raised questions about it upon reviewing the case's procedural posture. In particular, two concerns trouble us, so we must satisfy ourselves that these two concerns are unsubstantiated before addressing the merits of Yassan's case.

First, we are concerned that the jurisdictional requirements of 28 U.S.C. § 1441, the removal statute, prohibit

the federal court from hearing this case. Defendants may remove a "civil action" from state court to the federal district court located in "the place where such action is pending," as long as the federal district court had "original jurisdiction" over the case. 28 U.S.C. § 1441(a). Here, there is no question that the federal district court had original jurisdiction over Yassan's case: 28 U.S.C. § 1331 supplied subject matter jurisdiction over Yassan's ADEA claim, while 28 U.S.C. § 1367(a) supplied jurisdiction over his fraud and wrongful termination claims. But the removal of Yassan's case runs into problems with other parts of 28 U.S.C. § 1441(a): namely, the requirement that his case was "pending" at the time of removal. Removal of Yassan's case was only permissible if a case dismissed for want of prosecution on the previous day in state court can still be considered "pending" there.

Second, even if this case was "pending" at the time of removal, we are concerned that the jurisdictional requirements of the U.S. Constitution prohibit the federal court from hearing this case. Regardless of how a case ends up in federal court, U.S. Const. art. III only allows federal courts to adjudicate live cases or controversies. *See, e.g., Allen v. Wright*, 468 U.S. 737, 750 (1984) ("Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'") Neither the Illinois state court judge nor the federal district judge explicitly reinstated this case after its dismissal for want of prosecution. Consequently, we must determine whether a case previously dismissed by a state court for want of prosecution remains a live case

or controversy. If this case remained live even after the state court dismissal, we must then determine if it was still live at the time of the district court dismissal. If Yassan's case was dead—that is, no longer a live case or controversy—before removal, or if Yassan's case died at any point between removal and the district court's dismissal, then Article III prohibits us from reaching the merits.

Turning first to our concern regarding 28 U.S.C. § 1441(a), whether a case dismissed for want of prosecution can be considered still "pending" ultimately hinges on the meaning of the word "pending." The term pending is not defined within 28 U.S.C. § 1441. Moreover, we cannot find a federal case that authoritatively defines the term pending for the purposes of 28 U.S.C. § 1441(a). Nonetheless, the meaning of this term has been discussed several times in the context of 28 U.S.C. § 2244(d)(2), which clarifies the limitation period during which a prisoner can seek federal habeas relief. Although a petition for federal habeas relief is a very different type of matter from the civil action we have before us, we still find it helpful to consider the approach taken by courts to understand the term pending when it is statutorily undefined.

28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending" does not count toward the one-year limitation period defined in § 2244(d)(1). Faced with applications for habeas relief that were potentially time-barred, the Supreme Court

and several circuit courts have been forced to wrestle with the meaning of the term pending. In *Carey v. Saffold*, 536 U.S. 214, 219 (2002), the Supreme Court looked to the definition in *Webster's Third New World Dictionary*, which defined pending as "in continuance" or "not yet decided." From this definition, the Supreme Court concluded that an application was pending until it had "achieved final resolution." *Id*. at 220. Relying on *Carey*, the Eleventh Circuit later elaborated that "'pending' refers to the continuation of the process, or the time until the process is completed. . . . [T]he claim remains pending until the time to seek review expires." *Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006); *cf. Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999) (recognizing that "pending" meant something broader than "remain[ing] unresolved by a state district court"). Likewise, when considering the time limit for a criminal appeal, our circuit suggested in *United States v. Rollins*, 607 F.3d 500, 501 (7th Cir. 2010), that a case is pending in the district court until "the district judge is really finished with the case."

Outside the criminal and habeas contexts, other circuits have held that pending cases can include cases that have resulted in a final district court order—so long as the parties are still actively contesting the order in the court system. For example, in *Beverly Community Hospital Association v. Belshe*, 132 F.3d 1259, 1264 (9th Cir. 1997), the Ninth Circuit had to interpret what Congress meant when it decreed that new amendments to the Medicare Act, 42 U.S.C. § 1395 *et seq.*, would be applicable to lawsuits "pending as of . . . the date of the

enactment." The court concluded that the law applied "not only [to] undecided cases at the District Court level but also [to] actions pending on appeal." *Id.*; *see also de Rodulfa v. United States*, 461 F.2d 1240, 1253 (D.C. Cir. 1972) (holding that a "suit is pending until the appeal is disposed of, and until disposition any judgment appealed from it is still *sub judice*" (quotations and citations omitted)).

Informed by these previous discussions, we conclude that a state civil action is "pending" for the purposes of 28 U.S.C. § 1441(a), and therefore removable, as long as the parties are still actively contesting the case in the state court system. So long as the parties continue to contest the case in the state court system—whether they are contesting the case in the state trial court or on appeal—the case has not "achieved final resolution." *Carey*, 536 U.S. at 220.

Although we now have a working definition of what it means for a civil action to be pending in a state court under 28 U.S.C. § 1441(a), we still cannot determine whether Yassan's action was pending in Illinois state court on the date of removal without additional steps. Our understanding of pending tells us that Yassan's action was pending in the Illinois state court system as long as his case had not achieved final resolution there. We know that a state trial judge had dismissed Yassan's case for want of prosecution, but we must inquire further as to whether this dismissal constituted a final resolution of his case. Although our concern is with the federal removal statute, such an inquiry

requires us to consider the effect of a dismissal for want of prosecution under Illinois law.

Illinois courts have inherent authority to dismiss a case for want of prosecution, and this authority "exists independent of any statute." *Bejda v. SGL Indus., Inc.*, 412 N.E.2d 464, 467 (Ill. 1980) (quotation and citation omitted). Illinois courts recognize this authority as "necessary to prevent undue delays in the disposition of causes . . . and also to empower courts to control their dockets." *Sander v. Dow Chem. Co.*, 651 N.E.2d 1071, 1080 (Ill. 1995). Still, despite this interest in promoting efficiency, Illinois courts prefer resolution of a case on the merits, and a dismissal for want of prosecution in Illinois is not a dismissal on the merits. *Keilholz v. Chicago & Nw. Ry. Co.*, 319 N.E.2d 46, 47-48 (Ill. 1974). For this reason, when an Illinois court dismisses a case for want of prosecution, as here, the dismissal *can* become a final order, but it does not become one immediately.

When a dismissal for want of prosecution becomes a final order is dictated by 735 Ill. Comp. Stat. 5/13-217, which allows Illinois plaintiffs whose cases are dismissed for want of prosecution to "commence a new action within one year or within the remaining period of limitation, whichever is greater, after such judgment is reversed or entered against the plaintiff." The Illinois Supreme Court has deemed § 5/13-217 a "savings statute, with the purpose of facilitating the disposition of litigation on the merits." *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 693 N.E.2d 338, 342 (Ill. 1998). With this purpose in mind, the Illinois Supreme

Court has held that a dismissal for want of prosecution "is not a final and appealable order" as long as the plaintiff can still refile the case under § 5/13-217. *Wold v. Bull Valley Mgmt. Co., Inc.*, 449 N.E.2d 112, 114 (Ill. 1983); *see also Flores v. Dugan*, 435 N.E.2d 480, 482 (Ill. 1982) (holding that the "order or judgment in this case, dismissing the cause for want of prosecution, is not a final order since the plaintiffs had an absolute right to refile the action against the same party or parties and to reallege the same causes of action"). Only once the § 5/13-217 limitation period has expired do Illinois courts recognize a case dismissed for want of prosecution as "effectively terminated" and a "final judgment." *S.C. Vaughan Oil Co.*, 693 N.E.2d at 344; *see also Progressive Universal Ins. Co. v. Hallman*, 770 N.E.2d 717, 719 (Ill. App. Ct. 2002) (holding that "a DWP [dismissal for want of prosecution] is interlocutory as long as the option to refile is still available to the plaintiff").

When Chase purported to remove Yassan's suit to federal court on February 23, 2012, only one day had passed since the suit's dismissal for want of prosecution. Under § 5/13-217, Yassan had at least 364 more days to refile his suit in the Cook County Circuit Court. Consequently, the Cook County judge's order to dismiss was "not a final and appealable order" on the day of removal. *Wold*, 449 N.E.2d at 114. It was merely an interlocutory order. *Progressive*, 770 N.E.2d at 719.

Furthermore, even if the Cook County judge's dismissal order had been final and appealable, the order was so recent that it could have been easily vacated had

the case remained in Illinois state court. 735 Ill. Comp. Stat. 5/2-1301(e) allows Illinois courts to set aside a final order or judgment within thirty days after entry. Indeed, at oral argument, both sides acknowledged an informal practice of "almost automatically" vacating dismissals for want of prosecution under § 5/2-1301(e) within thirty days of issuance in Illinois state courts. At the time immediately prior to Chase filing a notice of removal, Yassan's case could have benefitted from this informal practice.

In sum, Yassan's case was unresolved in Illinois state court immediately prior to Chase's filing a removal notice. Yassan's case was not subject to a final and appealable order; it was both refileable and reinstatable in Illinois state court. With a better grasp of this case's status in Illinois state court prior to removal, we return to see whether this status fits with our federal under-standing of a "pending" state civil action under 28 U.S.C. § 1441(a). We determined that a state court action was pending for the purposes of § 1441(a), and therefore removable, as long as it had not "achieved final resolu-tion." *Carey*, 536 U.S. at 220. Illinois case law makes clear that Yassan's case had not achieved final resolution in Illinois state court. Yassan's case was subject to an interlocutory order dismissing the case for want of prose-cution, but not a final order. After the issuance of this interlocutory order, both parties actively continued to contest the case, as evidenced by Chase's filing of a re-moval petition the next day. And had Chase opted to fight Yassan's case in state court—instead of filing a notice of removal to federal court—the Illinois state

court would have almost automatically reinstated Yassan's case. As a result, Yassan's case was still pending in Illinois state court on the date of removal, and thus, was capable of being removed under 28 U.S.C. § 1441(a). *Accord Suraleb, Inc. v. Prod. Ass'n "Minsk Tractor Works," Republic of Belarus*, 2010 WL 2605356, at *1 (E.D. Wis. June 25, 2010) (finding a case removable under almost identical facts because the "proper analysis in determining whether a removable case existed does not examine whether the order was final at the time entered, but whether the order was still subject to the state court's modification or jurisdiction at the time of removal") (quotations and citations omitted).

Having satisfied ourselves that the case was pending in Illinois state court at the time of removal, we must further satisfy ourselves that Yassan's case was live at the time of removal—and has remained live throughout its pendency in federal court. U.S. Const. art. III demands "a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). It is not enough that Yassan's case was live in the Cook County Circuit Court or live upon removal; it must still be live today. *Id*.

When a defendant successfully removes a case to federal court, the "federal court inherits a removed case in its procedural posture on the date of removal." *LaPlant v. Nw. Mut. Life Ins. Co.*, 701 F.3d 1137, 1142 (7th Cir. 2012). At first glance, it appears that when Chase removed this case to federal court on February 23, 2012, the federal court inherited a case that was still pending,

but needed to be reinstated before further proceedings. But Yassan's case was never explicitly reinstated. The Cook County Circuit Court could have reinstated his case before removal under 735 Ill. Comp. Stat. 5/2-1301(e), and the federal district court could have reinstated his case after removal under either Fed. R. Civ. P. 59(e) or 60(b). Neither court ever did.

We know from our earlier review of Illinois case law that, had Yassan's case remained in the Cook County Circuit Court untouched and without reinstatement, the interlocutory order dismissing the case for want of prosecution would have become final once the 735 Ill. Comp. Stat. 5/13-217 refiling period ended. Once the dismissal order became final, the time clock to file a timely appeal would have begun, and once that clock expired, the case would have ceased to be live. Yet, as we know from the procedural posture, Yassan's case did not remain in the Cook County Circuit Court, and while it was never explicitly reinstated, it certainly did not remain untouched. On the contrary, after Yassan's case was dismissed for want of prosecution in Cook County Circuit Court, the case was removed by Chase, argued by both parties on a motion to dismiss, and appealed by Yassan in federal court. Both parties' behavior is inconsistent with a dismissal, and both parties' behavior is consistent with the case remaining a live case or controversy. Still, just because both parties believe that Yassan's case has remained live—and just because both parties desire the case to remain in federal court—does not mean that Yassan's case is live in reality. *See General Ins. Co. of Am. v. Clark Mall*

*Corp.*, 644 F.3d 375, 378 (7th Cir. 2011) (reminding parties that they "cannot consent to this court's jurisdiction"). Nonetheless, three considerations weigh in favor of finding that Yassan's case has remained a live case or controversy, despite never being explicitly reinstated.

First, Yassan's case does not present the typical live case or controversy problem. Generally, when once-live cases become dead during the course of litigation, mootness is to blame. Years of litigation sometimes outlast the natural course of the contested conduct. When it does, the federal court becomes "unable to grant any effectual relief," and the case becomes moot. *Medlock v. Trs. of Ind. Univ.*, 683 F.3d 880, 882 (7th Cir. 2012). Moot cases run afoul of the live case or controversy requirement under U.S. Const. art. III because they have developed a substantive flaw; the expiration of the complained-of conduct has transformed a once "distinct and palpable injury" to a mere "abstract proposition[]" existing "purely in the hypothetical." *Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 728-29 (7th Cir. 2006). In contrast, a procedural flaw is the root of the live case or controversy problem in Yassan's case. Neither the Cook County Circuit Court nor the federal district court explicitly reinstated Yassan's case after dismissal, but at all times throughout the course of this litigation, Yassan has continued to complain of an active injury that both courts are capable of redressing. The injury of which Yassan complains is as fresh as ever; at no point during this litigation has Yassan been re-hired or otherwise compensated by Chase. The fact that Yassan retains "a legally cognizable interest in the

outcome" of his case weighs in favor of finding that his case—despite its procedural flaw—satisfies the live case or controversy requirement. *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

Second, even though the Cook County Circuit Court judge never explicitly reinstated this case before removal, we believe there is a good argument that the case was *implicitly* reinstated as soon as Chase filed a removal petition. Illinois appellate courts recognize the equitable doctrine of revestment, which implicitly reinstates a matter that was never explicitly reinstated after dismissal. As one Illinois appellate court explained it:

> It is axiomatic that when a case is dismissed, the parties are out of court and any further proceedings are unauthorized until the judgment of dismissal is vacated and the cause reinstated. However, an exception to the general rule arises where the parties actively participate in further proceedings or where the party in whose favor dismissal was entered otherwise conducts himself in a manner inconsistent with the order of dismissal. Such action operates to nullify the order of dismissal and revests the trial court with jurisdiction.

*Governale v. Nw. Cmty. Hosp.*, 497 N.E.2d 1318, 1322 (Ill. App. Ct. 1986) (quotations and citations omitted). Chase, the party in whose favor dismissal was entered, certainly conducted itself in a manner inconsistent with the order of dismissal for want of prosecution. It filed a notice of

removal to continue the case in the federal district court. Chase's behavior after dismissal satisfies the requirements for revestment in Illinois, so this case was arguably reinstated in the Cook County Circuit Court before it was formally removed to the federal district court.

Third, even if Yassan's case were not equitably reinstated in Cook County Circuit Court before removal, we believe there is a good argument that the federal district judge implicitly reinstated Yassan's case after removal. As the federal district court judge noted in her order dismissing the case, both Chase and Yassan brought the dismissal for want of prosecution to the district court's attention. By bringing the dismissal to the district court's attention, Chase and Yassan did all they could to remedy the situation; only the district court judge had the power to reinstate the case. Once the district court judge became aware of the dismissal, the judge could have explicitly reinstated the case; however, the judge viewed the situation as a procedural error in removal and, as a result, did not believe an explicit reinstatement was necessary. Still, by deciding that the prior dismissal did not raise a jurisdictional issue and by subsequently moving on to decide the merits, the federal district court judge implicitly reinstated Yassan's case.

For these three reasons, we believe that Yassan's case has at all times remained a live case or controversy under U.S. Const. art. III, despite never being explicitly reinstated after its dismissal for want of prosecution. Because Yassan's civil action is a live case or controversy

that was pending in Cook County Circuit Court at the time of removal, we have jurisdiction to adjudicate it. We turn now, at last, to consider the merits of Yassan's case.

## III

At the center of Yassan's case is the release prepared by Chase and signed by Yassan after forty-three days of consideration—a release that was a prerequisite to Yassan receiving a severance package equivalent to almost six months' salary. The release contains a choice-of-law clause providing that disputes about the release will be governed by New York law. We enforce choice-of-law provisions as long as they are reasonable. *Kuehn v. Childrens Hosp., Los Angeles*, 119 F.3d 1296, 1301 (7th Cir. 1997). Because Chase's principal place of business is in New York, and because neither party objects to the application of New York law, we apply New York law to Yassan's allegations about the release.

Chase drafted the release, and the release is unquestionably broad; however, Chase gave Yassan forty-five days to consider the agreement, more than ample time to consult with a lawyer. Yassan does not allege that Chase forced him to sign the release. On the contrary, Yassan was an at-will employee; with his signature, Yassan explicitly acknowledged that he "was signing this Release in exchange for benefits to which [he] would not otherwise be entitled." Despite the fact that Yassan received valuable consideration for agreeing to release Chase from all potential claims (both known and un-

known), Yassan argues that Chase fraudulently induced him to sign the release.[2] But this argument completely ignores the unambiguous waiver provisions of the release agreement.

Chase gave Yassan a severance package solely in return for his agreement to waive all claims against Chase, including "claims he kn[e]w about *and claims [he did] not know about.*" (emphasis added). There was no other reason for Chase to pay Yassan six months' salary after his termination. Yassan knew this when he signed the release. Chase may have misrepresented its reasons for terminating Yassan, and Chase may have had ulterior motives for terminating Yassan. But Yassan explicitly released Chase from all tort claims, including fraud. Yassan should have considered the possibility that Chase was lying to him before he signed a release waiving any claims that arose out of Chase lying to him.

The terms of the release plainly bar all of Yassan's claims, but Yassan could still have a case if New York

---

[2] Yassan focuses on the argument that Chase fraudulently induced him to sign the release. But Yassan also appears to argue in his brief that Chase fraudulently induced him to give up his job, stating, "[Yassan] relied on [Chase's] lies to give up a job he liked with health insurance and other benefits and with status." This argument contradicts Yassan's own complaint, which states, "On March 31, 2010, Plaintiff was informed by his manager, Tully, that Plaintiff's job was being eliminated as of May 14, 2010." Consequently, it appears that Yassan would have lost his job with Chase no matter what, and any suggestion otherwise is disingenuous.

courts were reluctant to enforce a release this broad. In reality, New York courts enforce releases liberally, giving a "general release . . . its full literal effect where it is directly or circumstantially evident that the purpose is to achieve a truly general settlement." *Mangini v. McClurg*, 249 N.E.2d 386, 389-90 (N.Y. 1969); *see also Lucio v. Curran*, 139 N.E.2d 133, 136 (N.Y. 1956) (finding a general release defeats "not only . . . controversies and causes of action between the releaser and releasees which had, by that time, actually ripened into litigation, but . . . all such issues which might then have been adjudicated as a result of pre-existent controversies, . . . even though no such litigation had then been instigated").

Releases of claims unknown at the time of signing (like the release signed by Yassan) are enforceable under New York law. *Mangini*, 249 N.E.2d at 391 (holding that if "there was a conscious and deliberate intention to discharge liability from all consequences of an accident, the release will be sustained and bar any future claims of previously unknown injuries"). More specifically, releases of *fraud* claims unknown at the time of signing are enforceable under New York law—even if the alleged defrauder did not disclose his fraud to the party signing the release. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 527 (2d Cir. 1985) (rejecting the argument that parties "cannot be bound by a settlement agreement unless the alleged defrauder has made full disclosure to the other party prior to settlement"). According to the New York Court of Appeals:

> [A] release may encompass unknown claims, including unknown fraud claims, if the parties

so intend and the agreement is fairly and know-
ingly made. . . . [A] party that releases a fraud
claim may later challenge that release as fraudu-
lently induced *only if it can identify a separate fraud
from the subject of the release.* Were this not the
case, no party could ever settle a fraud claim
with any finality.

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de
C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011) (emphasis added)
(quotations and citations omitted).

Consequently, Yassan's release is fully enforceable
under New York law unless Yassan can identify a fraud
that is separate from the terms of the release. A separate
fraud might include Chase deceiving Yassan about
what he was signing. But Chase did just the opposite
here: Chase gave Yassan forty-five days to consider
the release, encouraged Yassan to consult with an at-
torney, and made it clear that Yassan's severance
package hinged on his signing the release. No matter
what prior representations Chase had made about its
reasons for terminating Yassan, Chase was forthcoming
with Yassan about the terms of the release-severance
package deal. Yassan had ample opportunity to review
and digest the terms of the deal before he agreed to it.

The fraud that Yassan alleges is not a separate fraud,
but a fraud that "falls squarely within the scope of the
release." *Centro*, 952 N.E.2d at 1001. As long as plain-
tiffs like Yassan are given sufficient time to evaluate
the scope of the release, New York law rejects any later
attempts "to be relieved of the release on the ground

that [the plaintiffs] did not realize the true value of the claims they were giving up." *Id*. As a result, we have no trouble concluding that Yassan's age discrimination, wrongful discharge, and fraud claims all fail because Yassan explicitly waived his right to make these claims when he agreed to sign a sweeping release in exchange for a severance package.

## IV

In addition to his substantive arguments, Yassan makes a procedural argument that the district court's dismissal of his action on a 12(b)(6) motion was improper because it "required an analysis of the facts surrounding Yassan's departure from Chase . . . on which discovery is needed to adequately flush [sic] out." Yassan is correct that the district court relied on facts outside his complaint in dismissing his case; indeed, the district court relied heavily on the text of the release, which Chase attached to its motion to dismiss.

At the dismissal stage, the court is typically confined to the pleadings alone, but "[i]t is . . . well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.' " *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (citing *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). Because Chase attached a copy of the release to its motion to dismiss, and because Yassan's complaint repeatedly referenced the release, it was proper for the district court to consider the text of the release in dismissing this case.

What was not proper was the rule under which the district court dismissed this case. The problem with Yassan's case is not that he failed to state a claim; the problem is that he signed a release waiving the right to make a claim. As a result, the district court judge dismissed Yassan's case on the basis of the release (and not the complaint's failure to state a claim). A release is an affirmative defense under Fed. R. Civ. P. 8(c)(1). Dismissing a case on the basis of an affirmative defense is properly done under Rule 12(c), not Rule 12(b)(6). *See, e.g., Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 (reminding that even "though district courts have granted Rule 12(b)(6) motions on the basis of affirmative defenses and this court has affirmed those dismissals, we have repeatedly cautioned that the proper heading for such motions is Rule 12(c), since an affirmative defense is external to the complaint"). Therefore, the district court made the right decision—dismissing the case—but under the wrong rule.

Nevertheless, Yassan argues that dismissal under any rule was inappropriate because he needed the opportunity for discovery to develop his case more fully. But his argument falls short because—even if the district court allowed discovery, and everything Yassan alleged proved to be true—Yassan's case would still fail under the terms of the release. As explained in Section III, if Chase knowingly lied to Yassan about its reasons for terminating him, Yassan's case fails because he subsequently released Chase from all "potential claims . . . [of] fraud." If Chase deliberately terminated Yassan because it was angry about his whistleblowing activities (although it is not clear from Yassan's

complaint that he ever blew the whistle about anything illegal), Yassan's case fails because he subsequently released Chase from all "potential claims . . . [of] wrongful or abusive discharge." Even if Chase purposefully discriminated against Yassan on the basis of his age, Yassan's case fails because he subsequently released Chase from all "potential claims . . . [under] the Age Discrimination in Employment Act of 1967." In exchange for all these releases, Yassan received valuable consideration to which he was not otherwise entitled. Yassan's procedural argument fails, just as his substantive arguments fail.

## V

As we have stated previously, "a deal's a deal." *Indus. Representatives, Inc. v. CP Clare Corp*, 74 F.3d 128, 132 (7th Cir. 1996). Yassan believes he has made a bad deal, but "a court cannot improve matters by intervention after the fact. It can only destabilize the institution of contract, increase risk, and make parties worse off." *Id.* at 131-32. Yassan had plenty of time to consider the repercussions of his deal, but he still decided to accept it. He agreed to waive a long list of current and future claims against Chase, and in return, Chase gave him almost six months' salary. Everything Yassan agreed to waive was spelled out in the plain language of the release. We will not ignore the plain language of the release just because Yassan failed to appreciate the extent of what he was waiving. For that reason, we AFFIRM the district court's dismissal of Yassan's suit.